## NORTHERN PACIFIC RAILROAD COMPANY v. PETERSON.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 153. Argued and submitted March 18, 1896. — Decided April 13, 1896.

H. was foreman of an extra gang of laborers for plaintiff in error on its road, and as such had charge of and superintended the gang in putting in ties and assisting in keeping in repair three sections of the road. He had power to hire and discharge the hands, (13 in number,) in the gang, and had exclusive charge of their direction and management in all matters connected with their employment. The defendant in error was one of that gang, hired by H., and subject, as a laborer, while on duty with the gang, to his authority. While on such duty the defendant in error suffered serious injury through the alleged negligence of H., acting as foreman in the course of his employment, and sued the railroad company to recover damages for those injuries. *Held*, that H. was not such a superintendent of a separate department, nor in control of such a distinct branch of the work of the company, as would be necessary to render it liable to a co-employé for his neglect; but that he was a fellow-workman, in fact as well as in law, whose negligence entailed no such liability on the company as was sought to be enforced in this action.

The duties of a railroad company, as master, towards its employés, as servants, defined; and it is held that if the master, instead of personally performing these obligations, engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow-servant, but of the master.

The previous cases in this court on this subject examined, and found to deter-

mine the following points, as to the liability of a railroad company for injuries to an employé alleged to have been caused by the negligence of another employé, while the injured person was in the performance of his ordinary duties:

(1) That the mere superiority of the negligent employé in position and in the power to give orders to subordinates is not a ground for such liability;

(2) That in order to form an exception to the general law of non liability, the person whose neglect caused the injury must be one who was clothed with the control and management of a distinct department, and not of a mere separate piece of work in one of the branches of service in a department;

(3) That when the business of the master is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the persons placed by the master in charge of these separate branches and departments, and given control therein, may be considered, with reference to employés under them, vice-principals and representatives of the master as fully as if the entire business of the master were placed by him under one superintendent.

There is no proof of a separate contract of hiring, by which the railroad company assumed obligations towards the defendant in error in excess of those ordinarily assumed by a company towards those employed by it as laborers.

THIS action was commenced by the plaintiff below (defendant in error) in the United States Circuit Court for the District of Minnesota, Fourth Division, to recover damages against the defendant alleged to have been 'sustained' on account of its negligence. The plaintiff was in the service of the corporation when the injury was sustained.

The defendant denied any negligence, and set up that whatever injury plaintiff below sustained was caused by his own neglect and carelessness.

The case came to trial and evidence tending to show the following facts was given: The plaintiff was a day laborer, and he and several others in July, 1890, were at a place called Old Superior, a station on the line of the defendant's road. They had been working on the road at that point, but work becoming scarce they had applied to one Mongavin, who was a roadmaster of the defendant and at that time stationed at Old Superior, for employment. Mongavin told them he had no more work for them there, but he would send them up to

Poplar, and they could go to work there if they wanted to ; that they could go up there and go on an extra gang that Holverson was running. He furnished them with passes to Poplar, and the men went up and were placed at work by Holverson on his extra gang. The work which was to be done was repairing the road and roadbed, putting in new ties where necessary, and work of that general nature.

After the plaintiff and his companions were employed by Holverson on the extra gang it then amounted in numbers to 13 men, with Holverson as foreman. The extra gang had duties precisely of the same kind as those pertaining to the regular section gang, which was employed on each section of the road to keep the same in repair. The road was divided into sections of about six miles in length, and the purpose of the extra gang was to help out the other gangs when the work on their sections became too much for the regular gang to do. Each section had a section foreman or boss under whom the section gang worked. The extra gang over which Holverson had charge, and into which plaintiff and his associates entered, instead of confining its assistance to one section, worked, where necessary, over a distance of three sections. Holverson had power to employ men and also to discharge them. The tools used by the men in repairing the road were furnished by the company. They were sent to Holverson, who gave them to the men as they required them. The men were stationed at Poplar, and were taken each morning on hand cars to the place where they were to work during the day, and when the work was finished were brought back. The members of the gang themselves worked the hand cars, Holverson generally occupying a place on the front hand car and taking care of the brakes, and applying them when thought necessary. He always went with the gang, superintended their work, even if taking no part in the actual manual labor, and came home with them at the end of the day's labor.

About a month after plaintiff had been working in this extra gang, and on the 19th of August, 1890, while returning on the hand car with the rest of the gang from the day's work,

the accident out of which this suit arises occurred. Holverson occupied his accustomed place on the front hand car at the brakes. The plaintiff and several of his associates were on the same car. The second car was occupied by the remainder of the gang. While proceeding around a curve on the track, Holverson thought he saw some object in front of him, and he applied his brakes, as was said, very suddenly, in consequence of which the car was abruptly stopped. He gave no warning of his intention, and the rear car was following so closely that it had no chance to stop before running into the car ahead, the result of which was that the first car was thrown from the track, throwing plaintiff off the car, and injuring his leg by having the rear car run over it.

It was alleged that the brakes on the rear car were defective, and that on that account the rear car could not be stopped as readily as it would otherwise have been. This issue was not insisted upon, and was not in fact submitted to the jury. There was also evidence that the hand cars were being run at the unusual rate of speed of from 12 to 15 miles an hour. Other evidence was given in regard to the nature of the wound and the alleged neglect of Holverson, and the injuries sustained by plaintiff below.

The court, among other things, charged the jury as follows:

"The plaintiff claims his injuries resulted from the negligent act of Holverson, who was the defendant's foreman of an 'extra gang of laborers,' of whom the plaintiff was one, working on the defendant's road.

"The defendant claims they resulted from the negligence of the plaintiff's fellow-servants, and also claims that Holverson was a fellow-servant of plaintiff. Whether he was so or not depends on the relation he sustained to the defendant company, and the court instructs you that if you find from the evidence that Holverson was a 'foreman on extra gang' for the defendant company, and that as such foreman he had the charge and superintendency of putting in ties and lining and keeping in repair three sections of the defendant's road; that he hired the gang of hands, about thirteen in number, to do this work for the company, and had the exclusive charge and

direction and management of said gang of hands in all matters connected with their employment, and was invested with authority to hire and discharge the hands to do said work at his discretion, and that plaintiff was one of the gang of hands so hired by Holverson, and that the plaintiff was subject to the authority of Holverson in all matters relating to his duties as a laborer, then the plaintiff and Holverson were not fellow-servants in the sense that will preclude the plaintiff from recovering from the railroad company damages for any injury he may have sustained through the negligence of Holverson, acting in the course of his employment as such foreman.

"If you find Holverson was not a fellow-servant of the plaintiff, but representing the company, then, as was well observed by counsel for defendant, the question under the evidence in the case for your determination is, was the injury the result of the negligent act of Holverson, the defendant's agent, who was riding on and had charge of the front hand car, or was it the negligence of the hands who were on and operating the hind car? If the negligence of the men on the hind car occasioned the accident the defendant is not liable; but if the accident resulted from the negligent act of Holverson the defendant is liable.

"You have heard the evidence relating to the functions and duty of Holverson and the hands at work under him, and upon a full and fair consideration of all that evidence, you will determine whose negligent act occasioned this accident."

Counsel for the defendant below asked the court to charge the jury on the question of defective brakes, but after some conversation between counsel and the court, the court stated:

"You do not want a charge further than the issues in the case. There is nothing about the brake in the case; it all reduces itself to this: If you find under my charge that Holverson was not a fellow-servant of the plaintiff, then the question is, through whose negligent act did this injury occur? Was it the act of Holverson, the foreman, who was on the front car, or was it the negligent act of plaintiff's fellow-servants on the hind car? If it was the act of Holverson, then the plaintiff is entitled to the agreed amount; if it was the

act of the men on the hind car, then plaintiff cannot recover, and your verdict must be for the defendant."

Exceptions were duly taken to the refusal to charge as requested by counsel for the defendant below and to the charge as above given.

The jury returned a verdict in favor of plaintiff. Upon writ of error the United States Circuit Court of Appeals for the Eighth Circuit affirmed the judgment, 4 U. S. App. 574, and the defendant below sued out this writ of error.

*Mr. William J. Curtis* and *Mr. C. W. Bunn,* for plaintiff in error, submitted on their briefs.

*Mr. Henry J. Gjertsen* for defendant in error.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The sole question for our determination is, whether Holverson occupied the position of fellow-servant with the plaintiff below. If he did, then this judgment is wrong and must be reversed.

By the verdict of the jury, under the charge of the court, we must take the fact to be that Holverson was foreman of the extra gang for the defendant company, and that he had charge of and superintended the gang in the putting in of the ties and assisting in keeping in repair the portion of the road included within the three sections; that he had power to hire (and discharge) the hands in his gang, then amounting to 13 in number, and had exclusive charge of the direction and management of the gang in all matters connected with their employment; that the plaintiff below was one of the gang of hands so hired by Holverson and was subject to the authority of Holverson in all matters relating to his duties as laborer. Upon these facts the courts below have held that the plaintiff and Holverson were not fellow-servants in such a sense as to preclude plaintiff recovering from the railroad company damages for the injuries he sustained through the negligence of

Holverson, acting in the course of his employment as such foreman.

In the course of the review of the judgment by the United States Circuit Court of Appeals, that court held that the distinction applicable to the determination of the question of a co-employé was not "whether the person has charge of an important department of the master's service, but whether his duties are exclusively those of supervision, direction and control over a work undertaken by the master, and over subordinate employés engaged in such work, whose duty it is to obey, and whether he has been vested by the common master with such power of supervision and management." Continuing, the court said that "the other view that has been taken is that whether a person is a vice-principal is to be determined solely by the magnitude or importance of the work that may have been committed to his charge, and that view is open to the objection that it furnishes no practical or certain test by which to determine in a given case whether an employé has been vested with such departmental control, or has been 'so lifted up in the grade and extent of his duties' as to constitute him the personal representative of the master. That this would frequently be a difficult and embarrassing question to decide, and that courts would differ widely in their views, if the doctrine of departmental control were adopted, is well illustrated by the case of *Borgman* v. *Omaha & St. Louis Railway*, 41 Fed. Rep. 667, 669. We are of the opinion, therefore, that the nature and character of the respective duties devolved upon and performed by persons in the same common employment, should in each instance determine whether they are. or are not fellow-servants, and that such relation should not be deemed to exist between two employés where the function of one is to exercise supervision and control over some work undertaken by the master which requires supervision, and over subordinate servants engaged in that work, and where the other is not vested by the master with any such power of direction or management." 4 U. S. App. 574, 578. The court thereupon affirmed the judgment.

It seems quite plain that Holverson was not the chief or

superintendent of a separate and distinct department or branch of the business of the company, as such term is used in those cases where a liability is placed upon the company for the negligence of such an officer. We also think that the ground of liability laid down by the courts below is untenable.

The general rule is, that those entering into the service of a common master become thereby engaged in a common service and are fellow-servants, and, *prima facie,* the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow-servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many States that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters it is a neglect of a duty which he personally owes to his employés, and if the employé suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow-servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such.

In addition to the liability of the master for his neglect to perform these duties, there has been laid upon him by some courts a further liability for the negligence of one of his servants in charge of a separate department or branch of business whereby another of his employés has been injured, even though the neglect was not of that character which the master owed in

his capacity as master to the servant who was injured. In such case it has been held that the neglect of the superior officer or agent of the master was the neglect of the master, and was not that of the co-employé, and hence that the servant, who was a subordinate in the department of the officer, could recover against the common master for the injuries sustained by him under such circumstances. It has been already said that Holverson sustained no such relation to the company in this case as would uphold a liability for his acts based upon the ground that he was a superintendent of a separate and distinct branch or department of the master's business. It is proper, therefore, to inquire what is meant to be included by the use of such a phrase.

A leading case on this subject in this court is that of *Chicago, Milwaukee & St. Paul Railway* v. *Ross*, 112 U. S. 377. In that case a railroad corporation was held responsible to a locomotive engineer in the employment of the company for damages received in a collision which was caused by the negligence of the conductor of the train drawn by the engine upon which plaintiff was engineer. This court held the action was maintainable, on the ground that the conductor upon the occasion in question was an agent of the corporation, clothed with the control and management of a distinct department, in which his duty was entirely that of direction and superintendence; that he had the entire control and management of the train, and that he occupied a very different position from the brakemen, porters and other subordinates employed on it; that he was in fact and should be treated as a personal representative of the corporation for whose negligence the corporation was responsible to subordinate servants. The engineer was permitted to recover on that theory. These facts give some indication of the meaning of the phrase.

In the above case the instruction given by the court at the trial, to which exception was taken, was in these words: "It is very clear, I think, that if the company sees fit to place one of its employés under the control and direction of another, that then the two are not fellow-servants, engaged in the same common employment within the meaning of the rule of law of which I am speaking." That instruction thus broadly

given was not, however, approved by this court in the *Ross case.* Such ground of liability, mere superiority in position and the power to give orders to subordinates, was denied. What was approved in that case, and the foundation upon which the approval was given, is very clearly stated by Mr. Justice Brewer in the course of the opinion delivered in the case of *Baltimore & Ohio Railroad* v. *Baugh,* 149 U. S. 368, at 380 and the following pages. In the *Baugh case* it is also made plain that the master's responsibility for the negligence of a servant is not founded upon the fact that the servant guilty of the neglect had control over and a superior position to that occupied by the servant who was injured by his negligence. The rule is that in order to form an exception to the general law of non-liability the person whose neglect caused the injury must be "one who was clothed with the control. and management of a distinct department, *and not a mere separate piece of work in one of the branches of service in a department.*" This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case.

When the business of the master or employer is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may properly be considered, with respect to employés under them, vice-principals and representatives of the master as fully and as completely as if the entire business of the master were placed by him under one superintendent. Thus Mr. Justice Brewer in the *Baugh case* illustrates the meaning of the phrase "different branches or departments of service," by suggesting that "between the law department of a railway corporation and the operating department there is a natural and distinct separation, one which makes the two departments like two independent kinds of business, in which the one employer and master is engaged. So oftentimes there is in the affairs of such corporation what may be called a manufacturing or repair department, and another strictly operating de-

partment; these two departments are, in their relations to each other, as distinct and separate as though the work of each was carried on by a separate corporation. And from this natural separation flows the rule that he who is placed in charge of such separate branch of the service, who alone superintends and has the control of it, is as to it in the place of the master."

The subject is further elaborated in the case of *Howard* v. *Denver & Rio Grande Railroad*, 26 Fed. Rep. 837, in an opinion by Mr. Justice Brewer, then Circuit Judge of the Eighth Circuit. The other view is stated very distinctly in the cases of *Borgman* v. *Omaha & St. Louis Railroad Co.*, 41 Fed. Rep. 667, and *Woods* v. *Lindvall*, 48 Fed. Rep. 62. This last case is much stronger for the plaintiff than the one at bar. The foreman in this case bore no resemblance in the importance and scope of his authority to that possessed by Murdock in the *Woods case* (*supra*). These cases which have been cited serve to illustrate what was in the minds of the courts when the various distinctions as to departments and separate branches of service were suggested. In the *Baugh case*, the engineer and fireman of a locomotive engine, running alone on the railroad and without any train attached, were held to be fellow-servants of the company so as to preclude the fireman from recovering from the company for injuries caused by the negligence of the engineer.

The meaning of the expression "departmental control" was again and very lately discussed in *Northern Pacific Railroad* v. *Hambly*, 154 U. S. 349, where it was held, as stated in the headnote, that a common day laborer in the employ of a railroad company, who, while working for the company under the orders and direction of a section boss or foreman on a culvert on the line of the company's road, receives an injury through the neglect of a conductor and an engineer in moving a particular passenger train upon the company's road, is a fellow-servant of such engineer and of such conductor in such a sense as exempts the railroad company from liability for the injury so inflicted.

The subject is again treated in *Central Railroad* v. *Keegan*, 160 U. S. 259, decided at this term, where the men engaged

in the service of the railroad company were employed in un-coupling from the rear of trains cars which were to be sent elsewhere and in attaching other cars in their place, and they were held to be fellow-servants, although the force, consist-ing of five men, was under the orders of a "boss" who directed the men which cars to uncouple and what cars to couple, and the neglect was alleged to have been the neglect of the "boss" by which the injury resulted to one of the men. This court held that they were fellow-servants, and the mere fact that one was under the orders of the other constituted no distinc-tion, and that the general rule of non-liability applied.

These last cases exclude by their facts and reasoning the case of a section foreman from the position of a superintend-ent of a separate and distinct department. They also prove that mere superiority of position is no ground for liability.

This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sections, aiding and assist-ing the regular gang of workmen upon each section as occa-sion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master as would be necessary to render the master liable to a co-employé for his neglect. He was in fact, as well as in law, a fellow-workman; he went with the gang to the place of work in the morning, stayed there with them during the day, superintended their work, giving direc-tions in regard to it, and returned home with them in the evening, acting as a part of the crew of the hand car upon which they rode. The mere fact, if it be a fact, that he did not actually handle a shovel or a pick, is an unimportant matter. Where more than one man is engaged in doing any particular work, it becomes almost a necessity that one should be boss and the other subordinate, but both are nevertheless fellow-workmen.

If in approaching the line of separation between a fellow-workman and a superintendent of a particular and separate department there may be embarrassment in determining the question, this case presents no such difficulty. It is clearly

one of fellow-servants. The neglect for which the plaintiff has recovered in this case was the neglect of Holverson in not taking proper care at the time when he applied the brake to the front car. It was not a neglect of that character which would make the master responsible therefor, because it was not a neglect of a duty which the master owes as master to his servant when he enters his employment.

It is urged, however, in this case that this judgment may be sustained upon another and distinct proposition. The counsel for the defendant in error says that it is alleged in the amended complaint, "that as a part of the contract of hiring, the defendant engaged to carry the plaintiff to and from his work upon the defendant's road as occasion should require, in a safe and proper manner." He then argues that the defendant having as a part of its contract of hiring assumed the obligation to carry safely, it was bound to exercise the same degree of care in its discharge as in any positive duty recognized or imposed by law, and that, therefore, the negligence of Holverson in the performance of his duty, whether it be from the relation of master and servant or one specially assumed under the contract of hiring, was a neglect of the master.

Although this allegation is contained in the complaint, it is denied in the answer, and there is no proof of any contract on the part of the defendant below to carry the plaintiff safely, further than is to be inferred from the fact that the company furnished hand cars which were worked by the gang and upon which they rode to and from the place of labor. If, under these circumstances, the servant be injured through the neglect of a fellow-servant, such as appears in this case, the master is not liable.

The charge of the court to the jury in the matter complained of was erroneous, and the judgment must, therefore, be

*Reversed, and the case remanded with directions to grant a new trial.*

The CHIEF JUSTICE and MR. JUSTICE FIELD and MR. JUSTICE HARLAN dissented.