# THE BALTIMORE AND POTOMAC RAILROAD CO.

## *v.*

## ELLIOTT.

EVIDENCE; MASTER AND SERVANT; NEGLIGENCE; DEFECTIVE
APPLIANCES.

1. In an action to recover for injuries caused by a defective car coupling, it is competent for a brakeman, who has personal knowledge of the facts, to testify as to wherein the coupling causing the injury was unsafe, and wherein it differed from other couplings used by him in the service of the company.
2. Where the testimony tends to show that while plaintiff, a brakeman, was engaged in detaching certain cars, by reason of the coupling being defective causing the drawhead to yield to an unusual extent, his finger was caught between the drawhead and the car and badly mashed, and that in jerking his finger out and excited by the pain, he partly slipped and let go his hold of the ladder on the end of the car, and his foot was caught as his finger had been and crushed, it cannot be said as matter of law that he was guilty of contributory negligence, but the question is for the jury.
3. It is the duty of an employer to furnish to his servant reasonably safe tools, appliances and machinery for the accomplishment of the work to be done by the servant; and he cannot escape liability for the defective condition of appliances furnished by delegating to another servant the duty of inspection of those appliances.

No. 577. Submitted October 13, 1896. Decided November 3, 1896.

HEARING on an appeal by defendant from a judgment on verdict in an action for damages for personal injuries. *Affirmed.*

The COURT, in its opinion, stated the case as follows:

This is a suit for the recovery of damages for personal injuries sustained by the appellee, Richard L. Elliott, who was the plaintiff in the court below, while in the employment of the defendant as a brakeman, in consequence, as he

claimed, of negligence on the part of the railroad company in not keeping the coupling appliances on its cars in reasonably safe and good condition.

The facts of the case, as we gather them from the record and from the very fair and lucid statement in the brief of the appellant, are these: On the 5th day of January, 1890, between 5 and 6 o'clock in the morning, when it was yet dark, the plaintiff, at that time in the employment of the defendant company as a brakeman, was in that part of the freight yards of the company in the city of Washington, known as the " Jersey Yard," extending on Virginia avenue from New Jersey avenue to Eleventh street; and was directed by the conductor of a freight train standing therein to detach from the train the two rear cars thereof. The plaintiff, in pursuance of this direction, climbed on top of the cars, went forward, and got down between the two cars which were to be separated, and stood upon the platform of the third car from the rear of the train, which was the last car to be left on the train. This platform was made of a wooden beam about ten inches wide, running the width of the car; and beneath it was what is called the drawhead, which consisted of a straight piece of iron, running parallel with the length of the car, fastened beneath the car, with a hole in the projecting end of it for the insertion of an iron link, which was the instrumentality for connecting the cars by means of two iron pins. In order to detach the cars it was necessary to remove one of these coupling pins, as they are called, and the plaintiff, standing on the narrow platform and supporting himself by grasping with one hand one of the rails of the ladder built on the end of the car and down which he had descended, took hold of the top of the coupling pin with the other hand, his posture at the time being that of stooping. Before the tension on the coupling pin could be relieved sufficiently for the plaintiff to remove the pin, it was necessary by a motion of the engine to force the cars closer together. In this operation the drawhead yielded

to an unusual extent, in consequence, as it is alleged, of its being out of order and in bad repair, retiring beneath the body of the car and forcing the top of the coupling pin back against the car. By this movement, one of the plaintiff's fingers was caught between the head of the pin and the end of the car, and a piece of the flesh was torn off. Jerking his finger out and excited by the anguish of the pain, he partly slipped and to some extent let go his hold on the ladder; and he put his foot into the place from which he had extricated his finger, with the result that in the succeeding jolt of the cars his foot was caught as his finger had been and was crushed. He was assisted off the car, and sent to a hospital, where he was compelled to remain nine months.

Subsequently for his injury he entered suit against the company on the ground indicated that the company was negligent in not providing proper appliances for its cars, and that this negligence was the cause of the injury. The defendant controverted the charge of negligence on its part, and also sought to show that it was contributory negligence on the part of the plaintiff to let go his hold on the ladder, as he did, and that he was not entitled to recover for the injury to his foot.

At the trial, the plaintiff, testifying on his own behalf, after stating the circumstances of the accident, and that he had been in the service of the defendant as a brakeman for about a month previous thereto, was asked this question:

" It is alleged that the coupling between the two cars where you were hurt was ill-constructed and unsafe. Will you explain wherein it was ill-constructed or unsafe. and wherein it differed, if it did differ, from other couplings which you have been accustomed to use during your employment under this railroad company?" To which his answer was: " It was unsafe, because the pin went all the way back, against the side of the car, by some means of disorder. I don't know what it was."

He was also asked the following questions, to which he gave the answers annexed:

"Was the Janney coupling in use on the road during your employment there?" Ans. "Yes, sir."

"Have you used the Janney couplers on other cars?" Ans. "Yes, sir." Objection was made to this testimony by the defendant, on the ground that the witness was not an expert in the matter of couplers and the construction of cars, and on the ground that the testimony was immaterial and irrelevant; and exception was duly reserved to its admission.

One Joseph D. Payne, also a brakeman in the employment of the defendant and upon the same train on which the plaintiff was injured, and who was to some extent an eye witness of the accident, was called as a witness for the plaintiff. After stating what he saw of the accident and his experience in coupling and uncoupling cars, he was asked this question, to which the defendant objected, and to the admission of which exception was duly reserved.

"Q. Such a drawhead as that, when in good repair, does it move? and if so, how much?"

The testimony in the cause was only that adduced on behalf of the plaintiff. The defendant introduced no testimony; but moved for an instruction to the jury to return a verdict in its favor. This motion was denied and exception noted.

The plaintiff then offered two prayers for instructions, both of which were given; and the defendant excepted. The defendant, on his own part, also requested two instructions, one of which was given and one refused; and to the refusal of the latter exception was noted. Thereupon the court charged the jury of its own motion; but to this charge no exception was taken.

The jury rendered a verdict in favor of the plaintiff for $5,000, of which the plaintiff was subsequently required to

remit, and did in fact remit, $1,500; and judgment was rendered for him for the sum of $3,500. From this judgment the defendant has appealed to this court.

*Mr. Enoch Totten* and *Mr. Howe Totten* for the appellant:

1. The court erred in admitting this testimony called for by the questions propounded to the plaintiff and the witness Payne, for it is expert evidence, and should only be allowed to be given by expert machinists, as was held in the cases of *Hamilton* v. *Des Moines Valley Ry. Co.*, 36 Iowa, 36 (1872), and *Muldowny* v. *Ill. Cent. Ry. Co.*, 36 Iowa, 472 (1873). See also Greenleaf Evidence, Sec. 440 n, p. 604; Rapalje's Law of Witnesses, p. 502.

The questions and answers concerning the Janney couplers were wholly immaterial, since the only question under the pleadings and issues in this case is whether or not the particular coupling in use on this car was suitable and well adapted to the purpose for which it was used. When a master furnishes his employees with tools and appliances, which, though not the best or most modern possible, may, by ordinary care, be used without danger, he has discharged his duty, and is not responsible for accidents. *Railway Co.* v. *Sentmeyer*, 92 Pa. St. 276; *Coal Co.* v. *Hayes*, 128 Pa. St. 300; *Railway Co.* v. *McDade*, 135 U. S. 554.

2. The plaintiff was guilty of contributory negligence, in not observing the necessary degree of caution while in a dangerous position. When he entered the service of the defendant company he assumed the risk of all dangers, however they might arise, against which he might protect himself by the exercise of ordinary observation and care. *Railway Co.* v. *Sentmeyer*, 92 Pa. St. 276. Here there were no dangers which he might not reasonably be considered to have assumed, and which he ought not to have guarded against, at least as far as the damage to his foot is concerned.

The rule of law that a carrier is liable to a passenger or outsider for injuries incurred by him while in a state of

panic for which the carrier is primarily responsible, or for injuries received by him through making an unforturnate choice between two dangers, would not apply to a brakeman in the line of his duty, for the reason that the risk which is assumed by the passenger or outsider is almost infinitesimal, while that assumed by the brakeman is necessaryily very great; therefore an emergency which might purge a passenger of contributory negligence would by no means so affect a brakeman.

3. There was an entire failure to show negligence on the part of the defendant or its agents in furnishing or knowingly using defective cars and appliances, and the jury should have been instructed to return a verdict for the defendant.

There was no evidence to show that this coupling was not perfect when put on the car, or that proper care had not been exercised by the defendant's servants in making examination, or as to whether the imperfection, if any, could have been discovered by the use of ordinary means. *DeGraff* v. *Railway Co.*, 76 N. Y. 125.

The defendant employed skilful men to inspect the cars and report for repairs all such as were out of order. There is absolutely no evidence to show that this car had been so reported, or that the defendant company had, or could have had, any knowledge of the alleged defects. Neither is there any evidence to show at what time the alleged damage to the draw-head occurred; and in the absence of such evidence it is fair to presume that it occurred shortly before the plaintiff's injury, or at least after the car was last regularly inspected. Even if the inspector was negligent in not examining the car or in not reporting the alleged injury (and there is no evidence to show either case), the plaintiff is not entitled to recovery for injury resulting therefrom, as the plaintiff and the inspector were fellow-servants. *Wonder* v. *Railroad Co.*, 32 Md. 418.

The presumption is that the car was in good order; or if

shown to be not so, there is a further presumption that the defendant had no knowledge of this fact, and in such cases as these the *onus probandi* is upon the plaintiff to negative these presumptions in order to make out a *prima facie* case. This the plaintiff has failed to do. 2 Thompson on Negligence, 1053, and cases cited. *Painton* v. *Railway*, 83 N. Y. 12 ; *Railway Co.* v. *Troesch*, 88 Ill. 545 ; *Railroad Co.* v. *Platt*, 89 Ill. 141 ; *Wonder* v. *Railroad Co.*, 32 Md. 411; *Richardson* v. *Cooper*, 88 Ill. 270 ; *Belair* v. *Railroad Co.*, 43 Iowa, 662.

The plaintiff, being an employee of the defendant company, assumed the dangers and risks incident to his employment ; and while it is the duty of the company to furnish suitable and safe machinery for his use, having done so it has discharged its duty, and it is not liable for their breakage or failure, unless it has been shown that the company has been guilty of negligence in regard thereto. *Mahoney* v. *Railway Co.*, 19 N. Y. Sup. 511 ; *Richardson* v. *Cooper*, 88 Ill. 270 ; *Railway* v. *Sentmeyer*, 92 Pa. 277 ; *DeGraff* v. *Railway Co.*, 76 N. Y. 125 ; *Painton* v. *Railway Co.*, 83 N. Y. 12 ; *Railway Co.* v. *Troesch*, 68 Ill. 546 ; *Railway Co.* v. *Wood*, 35 S. W. 879.

If the car coupling was out of order, the plaintiff should and would have discovered it, had he exercised due and proper caution. *Railway Co.* v. *Wood*, 35 S. W. 879.

*Mr. A. A. Birney* and *Mr. E. R. French* for the appellee.

Mr. Justice Morris delivered the opinion of the Court.

Four errors are assigned by the appellant: The first, in the admission of the testimony of the plaintiff and of Payne in regard to the unsafe character of the coupler on this car ; the second, in the granting of the plaintiff's prayers ; the third, in the refusal of the defendant's second prayer ; and the fourth, in the refusal of the the court to direct a peremptory verdict for the defendant. But these four assignments may be well reduced to three ; for the defendant, although including the first instruction given on behalf of tho plaintiff

in his assignment, wholly abandons it in argument; and neither in the brief nor in the oral argument is it sought to controvert the statement of the law that is set forth in that instruction; and we conceive that, under the authorities, it cannot successfully be controverted. The second instruction given on behalf of the plaintiff is practically the reverse of the proposition stated in the second prayer of the defendant, which was refused; and the giving of the former necessarily involved the refusal of the latter. Both may, therefore, be included in one assignment of error. Of these assignments in their order.

We cannot assent to the justice of the contention of the appellant, that the testimony sought to be elicited by the questions, heretofore noted, which were put to the plaintiff and to his witness Payne, called for expert testimony. It is not expert testimony when one is interrogated in regard to facts within his personal knowledge. Expert testimony, in the main, is matter of opinion, and not of personal knowledge of the facts of the particular case on trial. The witnesses here were asked as to facts within their personal knowledge. The plaintiff himself was asked to say wherein the special coupling that caused his injury was unsafe, and wherein it differed from other couplings which he had used in the service of the company. So far is this from expert testimony, that it is doubtful whether expert testimony would be admissible in such a matter. And even if the testimony sought to be elicited from the plaintiff and from Payne was in the nature of expert testimony, it was plainly in regard to a matter within their personal experience. That personal experience may have been limited, and their knowledge may have been inadequate; but that is a consideration for the jury in the estimation of the value of their testimony.

Nor can we perceive that the questions in regard to the Janney couplers have harmed the defendant. It does not seem to have been contended that the defendant was bound to use the Janney couplers on all its cars; and the court in

its charge, which was exceedingly fair and impartial, was particular to disabuse the jury of any such idea. The questions may well have shown the capacity of the witness to testify by eliciting the extent of his knowledge in regard to couplers.

With reference to the second assignment of error, involving the question whether, in respect of the injury to his foot, the plaintiff was guilty of contributory negligence, we think that question was fairly submitted to the jury under the instruction given on behalf of the plaintiff. This instruction was as follows:

"The jury are instructed that, in determining whether the plaintiff was guilty of contributory negligence, they are to take into consideration all the circumstances of the occasion and the exigencies of the plaintiff's position. And if the jury find from the evidence that the plaintiff's foot was injured in the effort to save himself from falling beneath the wheels of the cars, and that he was in danger of so falling by reason of having made an involuntary or impulsive movement, such as an ordinarily prudent man might have made uuder the same circumstance, as a consequence of a painful injury to his finger, and such injury was caused, without fault on his part, by a defective or unsafe coupling apparatus, and that the railroad company was guilty of negligence, as heretofore explained, in providing or maintaining such defective apparatus, then the plaintiff was not guilty of contributory negligence."

To the contrary of this, the instruction requested on behalf of the defendant, and which was refused, requested the court to find as matter of law, that in respect of the injury to his foot, the plaintiff was guilty of contributory negligence. This request for instruction was as follows:

"If the jury shall find in favor of the plaintiff, then, in estimating the damages, they cannot allow or assess any damage for the injury to the plaintiff's foot, and the estimation for damages must be confined entirely to the injury to the plaintiff's finger."

We find nothing whatever in the circumstances of the case that would justify the withdrawal of this question from the jury in the manner requested. On the contrary, there was every reason why it should have been submitted to them, as it was done. It is a case in which most reasonable people would be disposed to solve their doubts in favor of the plaintiff.

There remains the assignment of error based on the refusal of the court to direct a peremptory verdict for the defendant. And in view of what we have said of the question of the alleged contributory negligence of the plaintiff, this assignment can only be considered with reference to the question of the defendant's negligence.

The law to govern this case would seem to have been sufficiently settled by the Supreme Court of the United States. In the case of *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 642, and in the case of *Northern Pacific R. Co.* v. *Peterson*, 162 U. S. 346, the doctrine was stated and reaffirmed that, while an employer is not responsible to a servant for injuries caused by the negligence of a fellow-servant, yet it is his duty to furnish to the servant reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done by the servant, and that the employer may not escape liability by delegating to another the work of furnishing such safe tools, appliances and machinery.

There was testimony in the present case tending to show that the appliances furnished by the employer to the servant were not safe, and that there was negligence on the part of the employer, or on the part of those to whom it delegated the duty of inspection, in respect of those appliances. Under the authority of the cases cited, it was the duty of the court below to submit that testimony to the jury, and it would have been error to withdraw it from them.

We find no error in the Record; and we are of opinion that the judgment appealed from should be *affirmed with costs. And it is so ordered.*