Mike Mitchell, Appellee, v. Omaha Packing Company, Appellant.

Filed November 27, 1912. No. 16,831.

1. **Master and Servant: Vice-Principal.** Whether an employee occupies the position of a fellow-servant to another employee, or is the representative of the master, is not to be determined from the grade or rank of the offending or injured servant, but should be determined by the character of the act performed by the offending servant, by which another employee is injured; or, in other words, whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master.

2. ———: **Negligence: Liability of Master.** Where a master, instead of performing a duty which is personal to himself, directs an employee to perform that duty, he is liable for the neglect of that other, no matter what may be the position of the employee as to other matters.

3. **Appeal: Instructions: Harmless Error.** Where it clearly appears that the plaintiff in an action for personal injuries was not guilty of contributory negligence, the submission of that question to the jury by an erroneous instruction is error without prejudice to the rights of the defendant.

Appeal from the district court for Douglas county: Willis G. Sears, Judge. *Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*H. C. Murphy* and *John P. Breen, contra.*

Barnes, J.

Action to recover damages for personal injuries sustained by plaintiff while in the employ of the defendant, the Omaha Packing Company. On the trial in the district court for Douglas county, the plaintiff had the verdict and judgment, and the defendant has appealed.

It appears that the plaintiff and a native of Japan, called "Joe," on December 12, 1906, were working for the Omaha Packing Company, and were under the charge and

direction of one Aleck Romansky, who was night fireman of the defendant in its packing plant. The general duties of the plaintiff and Joe, hereafter called the Jap, were to bring coal to the boiler from cars that were set opposite the defendant's boiler house, to help pull the clinkers and ashes from under the boilers, to help Romansky swab the boiler flues, to wheel out the ashes and clinkers from the boiler house and deposit them in open railroad cars, which were set upon the tracks from time to time near the boiler house; that the defendant furnished a mechanical contrivance, called a "crane," for the purpose of elevating the ashes from the platform of the boiler house into the railroad cars; that the crane was broken, and, for three nights before the plaintiff received his injuries, he and the Jap had taken the ashes and clinkers out in wheelbarrows over a temporary runway and dumped them into the cars, which were set opposite the building for the purpose of receiving them. The cars were moved every day, which made it necessary to construct a new runway every night. On the night when the accident occurred, after the ashes and clinkers were taken out and cooled off, Romansky, who it is conceded was as to the defendant company a vice-principal, ordered the Jap to go out and construct a runway and platform to be used for the purpose of depositing the ashes and clinkers in the car. The Jap constructed such a runway and a platform out of materials which the defendant company had furnished and were at hand for that purpose. The runway appears to have been properly constructed, but the platform, which extended over the top of the open car, consisted of what is called a "grain door," which extended across the top, and from side to side thereof. This platform or grain door appears to have been thin in structure or so defective in its condition as to be unsafe for that purpose. Plaintiff testified that, when the Jap returned and stated that the runway and platform were ready for use, Romansky ordered him to wheel out the ashes and clinkers; that, when his third wheelbarrow load of clinkers struck the plat-

35

form, the wheel of the barrow broke through it, and thus caused him to lose his balance; that he fell from the car to the track below, a distance of some ten feet, and he thereby sustained very serious injuries. He also testified that the runway was made of solid plank, and was suitable for that purpose; that the grain door which was used as a platform, as above stated, appeared in the dim light situated nearby to be sound and safe and all right. There was practically no conflict in the evidence. At the close of the testimony, defendant requested the court to direct the jury to return a verdict in its favor. This request was denied. The jury were instructed by the court, and afterwards returned a verdict for $1,500 in favor of the plaintiff.

It is not claimed that the verdict is excessive, but it is strenuously contended that the court erred in not directing the jury to return a verdict for the defendant; and it is argued that the Jap and the plaintiff were fellow servants; that the defendant was not liable to the plaintiff for injuries received by reason of the negligence of his fellow servant. On the other hand, it is contended that, notwithstanding the fact that the plaintiff and the Jap were fellow servants in the performance of the general duties assigned to them, yet when the Jap, under the direction of his vice-principal, Romansky, constructed the runway and platform in question, he was acting for the company as vice-principal; that it was defendant's duty to furnish plaintiff with a reasonably safe place to work, and that duty could not be delegated to the plaintiff's fellow servant, and the defendant be thereby relieved from liability for the negligent performance of that duty.

It must be conceded that it was the duty of the defendant company to furnish the plaintiff with a reasonably safe place to work; that when the crane, which had been successfully used for elevating and dumping the ashes and clinkers into the railroad car was broken, or otherwise put out of commission, it was the duty of the defendant to supply another suitable and reasonably safe appliance

to be used for that purpose. It must also be conceded that if Romansky, who it is admitted was defendant's vice-principal, had constructed the runway and platform, his negligence would have rendered the company liable. Therefore, when Romansky delegated that duty to another, he thereby constituted him a vice-principal so far as the performance of that particular act was concerned; and such is the great weight of authority in this country.

In *Schroeder v. Flint & P. M. R. Co.,* 103 Mich. 213, it was said (quoting from McKinney, Fellow Servants, sec. 23): "The true test, it is believed, whether an employee occupies the position of a fellow servant to another. employee, or is the representative of the master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant, by which another employee is injured; or, in other words, *whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master."* The rule has been stated in another form, as follows: "If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such." *Northern P. R. Co. v. Peterson,* 162 U. S. 346. See *Robertson v. Chicago & E. R. Co.,* 146 Ind. 486; *Schaub v. Hannibal & St. J. R. Co.,* 106 Mo. 74, 87, 16 S. W. 924; *Justice v. Pennsylvania Co.,* 130 Ind. 321; *Flike v. Boston & A. R. Co.,* 53 N. Y. 549.

For the foregoing reasons, we are of opinion that the court did not err in refusing defendant's request for a directed verdict.

Defendant contends that the district court erred in instructing the jury, in substance, that Romansky was a vice-principal over the Jap, who constructed the runway

and platform in question, and while the Jap was engaged in that work he also acted as a vice-principal. The foregoing authorities effectually dispose of this contention, and error cannot be predicated on such an instruction.

Defendant further contends that the court erred in giving the eighth paragraph of his instructions, by which the jury were told, in substance, that one is charged with knowing that which he would have known under the circumstances, had he taken ordinary care and prudence to know, but he is not charged with knowing more than ordinary prudence required him to know. If the plaintiff actually knew of the condition of the platform as to quality, and still went on with his load, and that such act of so going was one of foolhardiness, then plaintiff cannot recover, as it would be a negligent act of a proximate nature leading to the injury. A workman, such as the plaintiff, has a right to repose some degree of confidence and reliance upon such structure erected by his principal for his use, and thereby to that extent is not charged with as close an inspection, as a duty towards himself, as if it were not so erected. But this does not admit of such employee closing his eyes or conscience to dangers that are apparent, but only a reasonable reliance under all attendant facts and circumstances as are known. By this, and other instructions, the court submitted the question of the plaintiff's contributory negligence to the jury. While this instruction is not to be commended, and in some cases might be erroneous, still under the facts disclosed by the evidence we are unable to see how it could have resulted in prejudice to any of the defendant's substantial rights.

It appears that a runway and platform had been constructed and used for at least two nights before the accident occurred; but on those occasions the grain door rested on a solid bed of ashes and cinders; while on the night in question the Jap constructed the platform without such solid foundation. The plaintiff testified that when he looked at the platform by a nearby light, which

was to some extent insufficient to enable him to ascertain its condition, it appeared to be sound and all right. This testimony was not disputed by any one; and, when we consider the fact that the plaintiff and the Jap had theretofore erected and used such a runway and platform with safety, it can hardly be said that the plaintiff was guilty of contributory negligence in assuming that the platform in question was safe and sufficient for the purpose for which it was constructed.

As we view the record, the evidence fails to disclose contributory negligence on the part of the plaintiff, and therefore the instruction complained of was error without prejudice.

We think the foregoing disposes of the questions which were presented in the argument of counsel for the defendant; and, finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.