## COGDILL v. WHITING MFG. CO. ·

### (Circuit Court of Appeals, Fourth Circuit. February 12, 1914.)

### No. 1172.

1. COURTS (§ 352*)—PRACTICE OF STATE COURTS—MOTION FOR NONSUIT—MOTION FOR VERDICT.

Where a motion had been made to instruct a verdict for defendant at the close of plaintiff's testimony, it was then too late for plaintiff to take a voluntary nonsuit, though such practice might be authorized in the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. § 352.*]

2 MASTER AND SERVANT (§ 159*)—DEATH OF SERVANT—DEFENSES—FELLOW SERVANT—NEGLIGENCE—COMPLIANCE WITH NONDELEGABLE DUTY.

Defendant may not avail itself of the defense of negligence of a fellow servant if it is in default in performing a nondelegable duty to furnish decedent with a safe place to work, and such failure resulted in decedent's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 318–325; Dec. Dig. § 159.*]

3. MASTER AND SERVANT (§§ 286, 289*)—DEATH OF SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

In an action for death of plaintiff's intestate by being struck by a log, alleged to have been negligently hauled by means of a cable attached to a steam winch, evidence *held* to require submission of the question of defendant's negligence and decedent's contributory negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1092–1132; Dec. Dig. §§ 286, 289.*]

4. MASTER AND SERVANT (§ 185*)—DEATH OF SERVANT—FELLOW SERVANT.

Whether a superior is a fellow servant or a vice principal does not depend on the mere fact that the negligent superior servant has ·control over and occupies a superior position to that in which an injured servant is employed, but rather on whether the negligent servant is clothed with control and management of a distinct department and not a mere separate piece of work in one of the branches of service in a department.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

5. MASTER AND SERVANT (§ 287*)—DEATH OF SERVANT—NEGLIGENCE—FELLOW SERVANT OR VICE PRINCIPAL—QUESTION FOR JURY.

Where decedent, an employé in a gang constructing a bridge, was struck and killed by a log which was being moved by a steam winch, alleged to have resulted from the negligence of the superintendent in failing to give proper signals to shut off the power when the log stalled, and it appeared that the superintendent had general charge of the erection of the bridge, giving orders as to when, how, and where the service of the men should be performed and when steam should be applied and shut off from the winch, whether he was a fellow servant or a vice principal was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. § 287.*]

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; James E. Boyd, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by J. W. Cogdill, as administrator of C. W. Cogdill, deceased, against the Whiting Manufacturing Company. Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff in error instituted this action in the superior court of Swain county, N. C., and the same was by appropriate proceedings removed by the defendant in error, a nonresident corporation, into the United States District Court for the Western District of North Carolina.

The case, as shown by the plaintiff's testimony, the defendant introducing none, briefly is: That on the 24th day of January, 1911, plaintiff's intestate, C. W. Cogdill, was in the employ of the defendant as one of a force of 25 or 30 men engaged in preparing timbers for the construction of a low water bridge, some 400 yards long, across the Little Tennessee river, between the counties of Swain and Graham, in said state; that, in order to remove the timbers that were being placed in the trestle of the work, a machine known as a skidder was used. The steam engine which furnished the power was located on one side of the river, and the skidder on the other; there was a large cable run across the river on which a carriage ran attached to tongs, the tongs and carriage being connected by wire ropes. The method was to hitch the tongs in the log, and pull the same until it reached a point immediately under the cable, when it was lifted and transferred across the river. Prior to transferring the logs to the cribbing, which was being built to support the bridge and trestle, the logs were peeled, and it was part of the duty of plaintiff's intestate to assist in peeling the logs, and, when so peeled, to hook the tongs in them, when they would be pulled to the cable and transferred to the position in which they were needed. That, on the day he was killed, plaintiff's intestate had been engaged, with other hands, in peeling logs. A log was peeled, the tongs hitched to the center of it, and a signal given to the engineer to pull. That after steam was applied, and the log moved some 50 or 60 feet, the front end caught against another log, and the engine, continuing to pull on the cable, lifted the rear end of the log, causing it to rise up 6 or 7 feet from the ground, when it deflected, swung against the plaintiff's intestate, and killed him. That Claud Day, on the day of the happening of the accident, was superintendent in charge of the work for the defendant company, and had full control and authority over plaintiff's intestate, and all persons engaged in the work, with full power to employ and discharge them. That one McLaughlin was operating the engine used in the work. That Day gave directions by signal to the engineer when to start and stop the engine, and on this occasion gave the signal to go ahead. That several minutes elapsed after the log hung, during which the pulling on the same continued. That there was no obstruction between Day and the engineer, and nothing to prevent him from giving instructions to the engineer to shut off steam, and that, upon the deflecting of the log, the accident happened immediately.

The plaintiff averred that by reason of the negligence of the defendant in error in failing to furnish plaintiff's intestate a safe place in which to work, and with suitable tools, machinery, and appliances, and because of the negligence of said Day in failing to discharge his duties under the circumstances, and in negligently discharging his duties, his intestate lost his life, all of which the defendant by its plea controverted, and insisted in argument that the plaintiff lost his life by his own negligence and want of care.

Issue being joined upon the pleadings, a jury was impaneled; and upon the conclusion of the plaintiff's testimony, the presiding judge intimating that the plaintiff's intestate and Claud Day, the defendant's representative in charge of the work, were fellow servants, the defendant moved to instruct a verdict for the defendant, whereupon the plaintiff asked leave to enter a nonsuit, which motion the court overruled, and thereupon sustained the defendant's motion for a verdict for the defendant, and directed the jury so to return their verdict, which being done, judgment was entered thereon, from which action the writ of error herein was sued out.

Julius C. Martin, of Asheville, N. C. (Frye & Frye, of Bryson City, N. C., and Martin, Rollins & Wright, of Asheville, N. C., on the brief), for plaintiff in error.

Alf. S. Barnard, of Asheville, N. C., for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

WADDILL, District Judge (after stating the facts as above). The assignments of error present for the consideration of the court but two questions: Whether the plaintiff had the right to take a voluntary nonsuit; and whether the court erred in directing the jury to find a verdict in favor of the defendant company, and entering judgment thereon. These assignments will be considered in the order named.

[1] First. Whatever may be the right of the plaintiff under the laws of North Carolina to take a voluntary nonsuit at the stage that the motion was interposed in the court below, such does not exist in the federal courts, even in cases arising in that state. In the case of Huntt v. McNamee, 141 Fed. 293, 72 C. C. A. 441 (to which, with the authorities therein cited, reference is especially made), a writ of error sued out from the Western district of North Carolina, this court gave much consideration to the question, and under the ruling and decision therein reached, from which we see no reason to depart, the plaintiff in error was clearly not entitled to enter a voluntary nonsuit, and hence this assignment is without merit.

[2, 3] Second. This assignment presents for consideration the correctness of the ruling of the court below in holding that the plaintiff's intestate and Claud Day were fellow servants, and in instructing, upon the evidence adduced, a verdict for the defendant in error, and entering judgment thereon. The plaintiff averred that the defendant failed to furnish his intestate with a safe place to work, and with safe, suitable, and proper instrumentalities with which to perform his labor. Upon the plaintiff establishing this contention, the fact of whether or not his intestate and Claud Day were fellow servants would be immaterial, since the defendant could not avail itself of the defense of negligence of a fellow servant, if it was in default in complying with one of the nonassignable duties and obligations imposed upon it. This question, however, as well as that of whether or not the plaintiff's intestate and Day were fellow servants, can only be determined from the evidence, and upon a careful consideration of the same, as shown by the statement above, we are unable to concur with the view of the lower court, either that the deceased and Claud Day were fellow servants, or that a verdict should have been instructed for the defendant. On the contrary, it is well recognized that the subjects of negligence and contributory negligence are mixed questions of law and fact, and should have been submitted to the jury to determine whether the disaster that befell plaintiff's intestate was caused by the defendant's want of due care or the intestate's contributory negligence.

[4] Whether the plaintiff's intestate and Claud Day are fellow servants, it is true is a question of law, determinable upon the facts ad-

duced, and, under our view, they are not fellow servants. Few subjects have received greater consideration at the hands of the courts of last resort, state and federal, than this; and it is well recognized, certainly under the decisions of the Supreme Court of the United States (Northern Pacific R. R. Co. v. Peterson, 162 U. S. 346, 355, 357, 16 Sup. Ct. 843, 40 L. Ed. 994; Santa Fé Pacific R. R. Co. v. Holmes, 202 U. S. 438, 26 Sup. Ct. 676, 50 L. Ed. 1094; Turner v. Lumber Co., 119 N. C. 387, 26 S. E. 23; Wade v. Contracting Co., 149 N. C. 177, 62 S. E. 919; Hipp v. Fiber Co., 152 N. C. 745, 68 S. E. 215; Richmond Granite Co. v. Bailey, 92 Va. 554, 24 S. E. 232; Labatt on Master and Servant, §§ 574, 575) that the rule of the nonliability of a master is not founded upon the mere fact that the servant guilty of neglect had control over, and was of superior position to that occupied by, the servant who was injured by his negligence, but the true rule as stated in Northern Pacific R. R. Co. v. Peterson, supra, 162 U. S. 355, 16 Sup. Ct. 846, 40 L. Ed. 994, is:

"That in order to form an exception to the general rule of nonliability the person whose neglect caused the injury must be 'one who was clothed with the control and management of a distinct department, and not a mere separate piece of work in one of the branches of service in the department.' This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case."

[5] In that case it was held that a section foreman of an extra gang of laborers, 13 in number, engaged in putting in ties and assisting in keeping in repair three sections of a road, with power to hire and discharge the hands, and aiding and assisting the regular gang of workmen on each section as occasion demanded, was not such a superintendent of a separate department, nor a person in control of such a distinct branch of the work of the master, as would render the master liable to a coemployé for his neglect, and that he was in fact, as well as in law, a mere fellow workman. That case, however, and other like cases, applying to different sets of employés in the common and general conduct of a railroad company's business, in our opinion decides nothing contrary to the views herein expressed. This is not a case of a person doing a separate piece of work in one of the branches of the service in a department, but is one distinct and single business within itself. The master was engaged in the construction of a bridge 400 yards long, across a river, with 25 or 30 men employed, a steam engine on one side of the river, and logs to be used in connection with the construction of the bridge, on the other side, the same to be moved by steam power; and the entire work was under the general direction and supervision of a single head, namely, Claud Day, who superintended the erection of the bridge, giving orders what the men should do, when, how, and where the service should be performed, and when steam should be applied and shut off, giving the latter orders by signal and direction from across the river to the engineer. A nonresident corporation was engaged in this enterprise, which required the exercise of skill and judgment in the performance of a delicate, dangerous, and important undertaking, in which the lives of many persons were constantly jeopardized; and to say that there was no direct-

ing head on the ground, or some person of responsibility employed in connection with the business, who could, speak for and on behalf of the master, would be to carry the doctrine of fellow servant to an extent dangerous in the extreme. If Day was not a fellow servant with plaintiff's intestate, then there can be no doubt of the error of the lower court in taking the case from the jury, as in that event, assuming the appliances and premises to have been safe and sufficient, it would clearly turn upon the correct solution of whether the injury arose to the plaintiff's intestate because of his want of proper care, or negligence and omission on the part of Day, seasonably to have anticipated the danger of the plaintiff's intestate and others, arising from the constant forcing by steam of the end of one log against other logs in the line or within the track of the one being pulled at the time. He should have known that the way was clear for the log to move before giving the signal to the engineer to start, and he was in a position, and saw, upon this undisputed testimony, the obstruction to the log's progress, and its failure to go forward, and hence should have signaled to the engineer, alone under his control, and at least 500 yards away, to cut off steam. These questions of whether the disaster was brought about from the failure and omission of this superintendent to perform his work or the failure of plaintiff's intestate himself to exercise proper care to avoid the danger were facts for the jury to pass on, and upon the correct determination of the same the right of recovery depended, and the court should not have withdrawn them from their consideration.

It follows from what has been said that the decision of the lower court should be reversed, and it is so ordered, at the cost of the defendant in error.

Reversed.