## MALVINA BRODEUR *vs.* THE VALLEY FALLS COMPANY.

A second foreman in the machine shop of a cotton mill is a fellow servant with the foreman of the slashing room, within the rule exempting the master from liability to a servant for injuries resulting from the negligence of a fellow servant in their common service.

Servants under the same master in a common service are fellow servants, though engaged in different departments of labor.

The ordinary risks assumed by a servant include the carelessness of his fellow servants.

TRESPASS ON THE CASE.  On demurrer to the declaration.

This action was brought to recover damages for the death of the plaintiff's husband, caused by the alleged negligence of the defendant.  The deceased was killed by a barrel which was thrown out of a door by one of the defendant's employees.

The defendant is a corporation engaged in the manufacture of cotton goods in the town of Lincoln, State of Rhode Island, where it has its manufactory and a large number of employees.  It has, under the officers of the corporation, a general superintendent, who has immediate control and direction of all the employees.  It has also overseers of the different rooms or departments, such as the slashing room, weave room, spinning room, machine shop, blacksmith shop, boiler room, etc., all under the direction and control of the general superintendent, who takes his direction from the officers of the corporation.  The deceased was employed as second hand, that is, second foreman, under the regular foreman of the machine shop, in the machine shop department, and took his orders from his immediate foreman or the general superintendent.  His duties were, in common with others employed in the machine shop department, to assist in keeping defendant's machinery in the several rooms or departments in proper repair or condition, and, in case of any breakage of machinery, to oversee and assist in its repair, under the direction of his immediate foreman or the general superintendent.  In the performance of these duties he was brought at different times into all the different rooms or departments of defendant's mills.  On the second day of April, 1884, the deceased was crossing an open court or yard, from the machine shop to the cast-iron room, so called, he being then and there engaged about his work in the machine shop at defendant's mill, and while passing across said yard was struck

upon his head by an empty barrel which was thrown by the over-
seer of the slashing and dressing room from the fourth story of
the building in which the machine shop is situated, and thereby
fatally injured.   Said deceased was not subject to the orders of
the overseer of said slashing room, but it was his duty, in case
said overseer should report to him that any of the machinery in
his department was out of repair or broken, to oversee the repair
of the same, subject to the orders of his immediate foreman and
general superintendent aforesaid.

On the said second day of April, 1884, the deceased was not
employed or at work in said slashing room or department, but was
employed and at work in the machine shop, which is situated on
the ground floor and                         feet under the slashing room
aforesaid.   The said overseer of said slashing room was not, on
said day, at work in the machine shop or with the deceased.   The
barrel was thrown without proper precautions.

*February* 9, 1889.   STINESS, J.   The question raised by this
demurrer is, whether the deceased and the foreman of the slashing
room were fellow servants, within the meaning of the rule which
exempts the master from liability to his servant for an injury
received through the negligence of a fellow servant in the course
of their common service.   The plaintiff contends that they were
not, because they were not employed in the same department.
The cases cited by the plaintiff, excepting those in Illinois, are
plainly distinguishable from the case at bar.   Thus, in *Chicago &
Milwaukee Railroad* v. *Ross*, 112 U. S. 377, it was held that an
engineer was not a fellow servant with a conductor in charge, and
to whom the company had given the right to command the move-
ments of the train and to control the persons employed on it, upon
the ground that the conductor should be treated, being so in fact,
as the personal representative of the corporation, for whose neg-
ligence it was responsible to subordinate servants.   In *Moon's
Adm'r* v. *R. & A. R. R.* 78 Va. 745, the company was building
a new road, and the construction, at the place of injury, was in
charge of a section master, who was held not to be a fellow servant
with a train hand, the company having delegated to an agent a
duty incumbent upon it.   It was also held that a conductor, hav-
ing control and direction, was not a fellow servant with the train

hand, but his superior. In *Ford* v. *Fitchburg Railroad Co.* 110 Mass. 240, the company was held liable for not providing a proper engine, and in *Davis* v. *Railroad Co.* 55 Vt. 84, for a defective roadbed. These cases stand upon very different considerations from the one before us. The duty of the master to furnish suitable machinery and appliances, and to keep the same in repair, is unquestioned. It is also well settled that, when a master delegates to a servant duties which belong to himself, the servant will occupy the place of the master, not that of fellow servant with other employés, and the master will remain as responsible for the negligence of this servant as if he were personally guilty of it himself. *Mulvey* v. *R. I. Locomotive Works*, 14 R. I. 204. In the present case the deceased was not under the overseer of the slashing room, nor did the latter stand in the place of the principal with reference to the deceased. But the decisive question in this case is, whether the circumstances set forth amount to fellow service, as the term is used in law. The cases in Illinois are directly in favor of the plaintiff's contention. They proceed upon the distinct ground that, to constitute workmen under the same master fellow servants, they must directly coöperate with each other, or, by their usual duties, be brought into such habitual association as to have the power of influencing each other to the exercise of constant caution, by example, advice, encouragement, and by reporting delinquencies. In the case of *Chicago & N. W. R. R.* v. *Moranda*, 93 Ill. 302, the court reviews and affirms its position at length. It remarks, however: "Although the distinction taken by this court between these two classes of co-servants," *i. e.* those employed in the same department and those employed in separate and disconnected branches of the business, "has not the sanction of the courts of England, nor that of most of the courts of last resort in this country, we think, on principle, it is a distinction that ought to be taken."

But this distinction has not been overlooked in the adjudications upon this subject. In the early case of *Farwell* v. *Boston & Worcester R. R. Corp.* 4 Metc. 49, the consideration of a distinction between those two classes of servants was pressed upon the court. Upon this point, Shaw, C. J., says, in the opinion of the court: " When the object to be accomplished is one and the same, when

the employers are the same, and the several persons derive their authority and compensation from the same source, it would be extremely difficult to distinguish what constitutes one department and what a distinct department of duty. It would vary with the circumstances of every case. If it were made to depend upon the nearness or distance of the persons from each other, the question would immediately arise, how near or how distant they must be to be in the same or different departments. In a blacksmith's shop, persons working in the same building, at different fires, may be quite independent of each other, though only a few feet distant. In a ropewalk, several may be at work on the same piece of cordage, at the same time, at many hundred feet distant from each other, and beyond the reach of sight and voice, and yet acting together. Besides, it appears to us that the argument rests upon an assumed principle of responsibility which does not exist. The master, in the case supposed, is not exempt from liability because the servant has better means of providing for his safety when he is employed in immediate connection with those from whose negligence he might suffer, but because the *implied contract* of the master does not extend to indemnify the servant against the negligence of any one but himself ; and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied." The reasons here set forth are a strong answer to the position taken in the Illinois cases. They show an obvious impracticability in trying to gauge the liability of an employer, in a complex business, by the independence of its different branches, or by the intercommunication of those employed. Not only would it be almost impossible, in many cases, to separate the work into distinct departments and to discern their dividing lines, but incidental duties, changing the relations of workmen to each other, would vary also the master's liability. He would thus be liable for the negligence of a servant at one time or place and not at another. Without a personal supervision of all his help in all their work, he could not know when he was responsible and when he was not. Moreover, such a rule would govern the liability of a master when the groundwork upon which the rule is founded did not exist. For if

the test of liability be that of the separate and independent duties of the servants, they may, nevertheless, be so near each other as to be able to exert a mutual influence to caution ; or, if it be that of association, they may still be in the same department, but unable, from their duties or position, to exert such influence.   But, aside from these considerations, we do not think the rule is correct in principle.   The principle upon which the determination of *Farwell* v. *Boston & Worcester R. R. Corp.* proceeded is the same that has been generally followed in England and in this country, namely, that the rights and liabilities of both master and servant are those which grow out of their contract relation.   The master impliedly agrees to use due care for the safety of his servant, in providing suitable places and appliances for work ; and, as is universally conceded, the servant agrees to assume the ordinary risks of his employment.   The most common risks of service spring from the negligence of fellow servants.   When one works with others, he knows that his safety depends on the exercise of care by those around him, as their safety depends also upon his own caution.   No man can enter into an employment without a thought of this.   Negligence, therefore, among workmen is a breach of the duty which each owes to the others, and not a breach of the master's duty, if he has exercised the care that is required of him. For his own negligence the master must answer, but for that of others, which is a risk incident to every employment, he has not agreed to be responsible, but on the contrary the servant has impliedly agreed to assume it upon himself.   The contract relation, therefore, puts them outside of the rule which makes a master liable to a stranger for the negligence of his agent, for *respondeat superior* is based upon considerations of public policy which are not called for in the relation between master and servant.   The cases cited by the defendant abundantly illustrate and support the generally recognized doctrine that servants under the same master, in a common service, are fellow servants, although they may be engaged in different departments of labor.

But the plaintiff further contends, even in this view of the case, it is only the ordinary risks, which can be reasonably foreseen and taken into account, that the servant assumes ; and, consequently, since the deceased could not foresee such an act of carelessness as

the throwing of the barrel, it is not within the risks assumed. We have already said that the ordinary risks include the carelessness of others. This rule is distinctly recognized in *Railroad Company* v. *Fort,* 17 Wall. 553, one of the cases cited by the plaintiff upon this point, The court say : " The. employé, in entering the service of the principal, is presumed to take upon himself the risks incident to the undertaking, among which is to be counted the negligence of fellow servants." In that case a boy of tender years was sent by a superior, whose orders he was required to obey, to adjust a belt in a dangerous place, outside of his regular duties, in ignorance of the danger. There is a wide difference in the application of the rule in such a case and in the case at bar. The argument of the plaintiff here, if followed, would abrogate the rule ; for the careless acts of another are just the ones that cannot be foreseen. If they could be, it would be because they were a part of the ordinary way of doing things, and, therefore, presumably not negligent. They are, nevertheless, a part of the ordinary risks. We think the plaintiff's claim that the deceased and the overseer of the slashing room are not to be regarded as fellow servants is untenable, and that the demurrer to the declaration must be sustained.                                   *Demurrer sustained.*

*Patrick J. McCarthy,* for plaintiff.

*James M. Ripley,* for defendant.