THE ATCHISON & EASTERN BRIDGE COMPANY V. LENA
M. MILLER, *as Administratrix, etc.*

No. 13,845.    (80 Pac. 18.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Fellow Servants Defined.* All em-
ployees of the same master engaged in the same general
business, whose efforts tend to promote the same general
purpose and accomplish the same general end, are fellow
servants.

2. —————— *Assignment to Separate Departments.* The assign-
ment of servants of the same master to separate depart-
ments of the same general enterprise does not affect their
relation as fellow servants unless such departments be so
far disconnected that each one may be regarded as a sepa-
rate undertaking.

3. —————— *Personal Relations of Employees Immaterial.* It is
not essential to the fellow-servant relation between em-
ployees of the same master that they should have an oppor-
tunity to become acquainted with each other, or to observe
each other's conduct, or to take precautions against each
other's negligence, or to influence each other in the forma-
tion of habits of foresight and care.

4. —————— *Assumption of Risk.* Fellow servants assume the
risk of injury from each other in their common conduct of
the master's work.

5. —————— *Contract and Liability of the Master.* The master,
however, contracts to exercise reasonable care in the selec-
tion of his servants and to furnish them with a reasonably
safe place in which to work and reasonably safe materials,
tools and appliances with which to work, and he is liable for
injuries resulting from breaches of these duties, no matter
what may be the ordinary duties or the rank or grade or
department of the servant to whom their performance has
been delegated.

6. —————— *Pile-driver and Machinist Held Fellow Servants.* A
member of a pile-driving crew engaged in driving piling for
the erection of false work essential to the reconstruction of
a bridge is a fellow servant with a machinist employed by
the same master to repair stationary engines located in the
midst of the work upon barges, upon the bridge and upon

the false work, and used for hoisting material and driving piling in the progress of the general enterprise of building the false work.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed March 11, 1905. Reversed.

*W. W. & W. F. Guthrie,* for plaintiff in error.

*Z. E. Jackson,* and *Jackson & Jackson,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.:  At the time the injury complained of in this litigation was inflicted the Atchison & Eastern Bridge Company was engaged in the erection of false work essential to the reconstruction of a bridge across the Missouri river at the city of Atchison. The false work served as a substructure of the old bridge during the dismantling process, of the new bridge as piece by piece it replaced the old one, and of a temporary bridge for highway purposes alongside the bridge proper, over which railway traffic was not interrupted. Many men were employed in many kinds of service. A single superintendent managed the entire work, various branches of which were in charge of foremen who directed the operations of separate squads and gangs. Material was assembled and distributed by skiffs and barges on the river and by cars on the bridge-tracks. Many kinds of tools and much machinery were used and transported from place to place. Piles were driven and braced and capped and a multitude of subsidiary acts performed, all to the ultimate end that the false work might be brought to completion.

Stationary engines were used to hoist material and to drive the piling. These engines were located in the midst of the work, upon the barges, upon the bridge,

and upon the false work.  The plaintiff's intestate, Miller, was employed as a machinist by the bridge company to repair them, and, in addition, to operate them when necessary.  On the first day of his service, while he was engaged in repairing an engine situated on the bridge and only three feet from its north edge, a pile-driver barge moored below him and the crew undertook to drive a pile.  It met with an obstruction which rendered it necessary to raise it and resharpen the point.  While it was suspended for that purpose, its top towering thirty feet above the floor of the bridge, it fell, and Miller was knocked under the wheels of a passing train, where he received injuries from which he died.  His administratrix recovered a judgment against the bridge company, to reverse which this proceeding in error was instituted.

On the trial it sufficiently appeared that the injury was caused by the negligence of a member of the pile-driving crew in fastening the chain used to lift and hold the pile in suspension.  The jury, however, returned special findings of fact which raise the question whether the member of the pile-driving crew charged with the duty of adjusting the chain was not a fellow servant of Miller in the general enterprise of constructing the false work.  Such findings, arranged as well as they may be to develop the subject, are as follow:

"81.  State whether or not the defendant at the time the pile fell was engaged in the undertaking of constructing false work to support the ironwork of the bridge during the progress of reconstruction.  A.  Yes.

"82.  State whether or not, in constructing such false work, stationary engines were used for the purpose of raising and lowering timbers and on stationary and barge pile-driver.  A. Yes.

"83.  State whether or not Miller was employed to do any necessary work done on the stationary engines used by the defendant, which required attention from a machinist.  A.  Yes."

"85½.  If you answer question No. 83 in the af-

firmative, state what, if anything, in addition to work as a machinist, Miller was employed to do. A. Run an engine."

"106. State whether or not, in the course of practice on that work, men in one crew were interchanged with men in others, in the judgment of the superintendent. A. Yes."

"84. State whether or not the work which Miller took service to perform would require him to work in and around the places where other men engaged in putting up the false work were at work. A. Yes.

"85. State whether or not the work which Miller took service to perform required him to work in and about places where negligence on the part of other employees engaged in putting in the false work might result in injury to him. A. Yes."

"24. Was the line of service in which said William I. Miller was employed that of a machinist to repair and keep in order the hoisting-engines and machinery used by the defendant company in the prosecution of its work? A. Yes.

"25. Was the duty and work in which the barge-crew was employed at the time of the injury to said Miller that of operating the machinery upon the barge and hoisting and driving piling in the bed of the Missouri river? A. Yes."

"14. At the time said William I. Miller, deceased, received the injuries from which he died, was he engaged as a machinist in repairing a hoisting-engine upon the floor of defendant's bridge? A. Yes."

"1. Did a pile fall in the direction of and toward William I. Miller, deceased, at the time he received the injury from which he died? A. Yes."

"15. If you answer question 1 'Yes,' or in the affirmative, then was such pile being raised about ten feet north and east from where said Miller was then at work? A. Yes.

"16. If you answer question 1 'Yes,' or in the affirmative, then was such pile being raised from a barge or boat floating on the river? A. Yes.

"17. If you answer question 16 'Yes,' or in the affirmative, then was such barge or boat about twenty feet lower elevation than the floor of the defendant's bridge? A. Yes.

"18. If you answer question 16 'Yes,' or in the af-

firmative, then was such pile raised until the top was about thirty feet higher than the floor of defendant's bridge?  A.  Yes."

"39.  State whether or not the engine upon which Miller was working was located about three feet from the north side of the bridge.  A.  Yes."

"79.  State whether or not Miller was working at the time on the engine within ten or fifteen feet of the pile-driver.  A.  Yes.

"80.  State whether or not Miller, at the time the pile fell, was working where he could see the operations upon the pile-driver.  A.  Yes."

These facts are sufficient to enable the court to draw the proper conclusion of law as to the relation of the deceased and the chainman of the pile-driver crew.

Each party to the suit sought the legal opinion of the jury upon certain phases of the controversy.  To the plaintiff the jury responded as follow:

"21.  Were said William I. Miller, deceased, at the time he received the injury from which he died, and the barge- or boat-crew employed in raising the pile, engaged in different lines of work or employment? A.  Yes.

"22.  Were the work and duties of said William I. Miller such as to bring him into habitual association with said barge-crew, so that he might exercise an influence upon said barge-crew promotive of proper care and caution, and the line of employment of said barge-crew such that they might exercise an influence upon said Miller promotive of proper care and caution? A.  No.

"23.  At the time said Miller received the injuries from which he died, was he working in a different line of duty and service from that in which the barge-crew was at work and employed?  A.  Yes."

To the defendant they answered thus:

"86.  State whether or not all of the employees engaged in constructing false work to support the iron-work of the bridge during process of reconstruction, or in aiding them in such work, were engaged in the

common enterprise of constructing such false work. A. Yes."

This court can say whether the repair of engines is a different kind of service from pile-driving, whether from the nature of their duties and the situations of the machinist and the chainman they might in their work exercise an influence upon each other promotive of care and caution, and whether they were both engaged in a common enterprise, as well as the jury; and the questions and answers last presented are reproduced here chiefly for the purpose of elucidating the theories of counsel respecting the rules of law applicable to the case.

From these questions and answers it is apparent the plaintiff relies upon the so-called "departmental" and "consociation" limitations of the fellow-servant rule acknowledged in certain jurisdictions, while the position of the defendant is that identity of department and consociation of duties are not tests of the master's liability, but that, if the injured and the injuring servants work under the control of a common master in a general employment directed to a common end, the master is not liable, provided, of course, the neglected duty be not one which the master himself must perform.

There is much force in the defendant's argument that the master is not liable in this case even under the consociation theory of the relation between the servants. Miller's duties called him into the most intimate association with the other men. The conduct of each was at all times likely to affect the others. If his tools should fly from his hand or a separated part of the machinery he was repairing should escape him they might strike a member of the barge-crew. If a pile were unskilfully handled it might strike him. Trucking crews passing and repassing with tools, machinery and materials might injure him, and carelessness in his conduct might injure them. When he was

injured he was within ten or fifteen feet of the barge-crew, and in plain view of the pile which hung almost over him, and his duties constantly exposed him to such perils. The nature of his employment was such that he might have been repairing or even running the engine used for hoisting the pile which fell at the time it fell. He was almost as intimately related to the chainman as the engineer upon the barge.

In states where the consociation doctrine prevails it is held that the length of time the different servants may have been at work is not material, and that all of them need not be engaged to do work precisely identical in kind.

"It is true they might have been fellow servants in the strictest sense, and yet they might not have been associated an hour before the happening of the injury. What is meant is, if the parties continue to be engaged in a common service they will be habitually associated, so that they may exercise any influence over each other promotive of common safety." (*Chicago & Alton R. R. Co. v. Hoyt,* 122 Ill. 369, 375, 12 N. E. 225, 227.)

"The fact that an employee was only temporarily engaged at a particular task and that he had no acquaintance with his colaborers does not operate to bar the application of the doctrine of fellow servants." (*Klees v. C. & E. I. R. R. Co.,* 68 Ill. App. 244.)

"It is an error to suppose that a force of men cannot be engaged in a common service unless all are continuously working at the same time and engaged in doing precisely the same kind of work. It is sufficient if all are actually employed by the same master, and that the work of each, whatever it may be, has for its immediate object a common end or purpose, sought to be accomplished by the united efforts of all. The skill of a carpenter, blacksmith, or other mechanic, might be very useful in removing a wreck, and when thus working together in such a service, though each one in his own particular way, they are all, within the meaning of the rule, engaged in a common employment."

(*Abend v. T. H. & I. R. R. Co.*, 111 Ill. 202, 211, 53 Am. Rep. 616.)

If this be true, all the conditions of the consociation doctrine are fairly satisfied in this case, since the findings of fact disclose a very necessary dependence of the machinist and the pile-drivers upon each other's care and vigilance for mutual safety, and abundant opportunity for the operation of reciprocal influences conducive to their common welfare.

It is not the purpose of the court, however, to rest its decision upon this ground, if another and more fundamental one be discoverable.

If the decisions of this court show that it has in the main consistently adhered to a logically defensible theory respecting the liability of a master for an injury to one of his servants caused by the negligence of another, those decisions and the theory upon which they proceed ought to be followed unless great injustice would result from doing so. To discover the true position of the court upon this subject an examination of its leading and best-considered cases is necessary.

In the early case of *Dow v. Kansas Pacific Rly. Co.*, 8 Kan. 642, it was held that a conductor and a brakeman of the same railway-train are fellow servants. The court was greatly impressed with the duty of railroad companies to make their service safe to the traveling public, and, believing that the watchfulness over each other of officers and agents charged with the running of trains would tend to promote the general welfare, it apparently undertook to encourage such conduct by preventing a recovery against the master in case one of those servants should injure another. In the opinion it was said, at page 645:

"The paramount object of nearly all the rules of law concerning the operation of railroads is security to the person and lives of human beings, and particularly security to the persons of passengers being transported on the trains from one portion of the country

to another; and in order to insure this security the railroad companies are held to the strictest accountability with regard to passengers. They must use the utmost care and skill within the scope of human foresight or human knowledge practicable. They are liable to passengers for the slightest negligence on the part of their agents or servants. But this is not all. A rule must be adopted that will insure the most skilful and trustworthy agents and servants. . . . But it is also the policy of the law to make it to the interest of every servant or agent of the railroad company to see that every other servant or agent of the company is competent and trustworthy. This may be done by making it to the interest of every employee of the railway company to inform the company of every act of any other employee showing a want of skill, care or competency. The employees of the railway company have the best opportunities of knowing the competency and trustworthiness of the other employees of such company; and if they do not think the other employees are competent or careful, let them either inform the company, so that the incompetent or negligent employees may be discharged, or themselves quit the service of the company. Who can know better whether a conductor of a railroad-train is competent and trustworthy than the brakeman of the same train? . . . As to passengers, and generally as to any person not in the employ of the company, the negligence of any agent or servant of the company is the negligence of the company. As to such persons even the negligence of the brakeman is the negligence of the company. But as between coemployees no one is peculiarly the representative of the company more than another, except perhaps the higher officers whose duty it is to employ and discharge the other employees, and therefore as between coemployees the negligence of none but the higher officers aforesaid is the negligence of the company. If such higher officers are not careful and diligent in employing and discharging or retaining the other employees then the company is responsible to the other employees for the negligence of such employees as may have been employed or retained without proper care."

From these extracts it is plain, however, that the court was not attempting to establish a general foun-

dation for the law of coservice. Finding a peculiar state of facts to which the reasoning of the opinion would apply, it drew a limited conclusion, without discussing the bearing of the argument upon broader subjects. It was sufficient to make the interest of the public the controlling consideration in determining who should be liable for the negligent infliction of injuries upon each other by persons charged with the running of trains. As far as it went the opinion was an affirmation of the views of Chief Justice Shaw in the epoch-making case of *Farwell v. Boston and Worcester Rail Road Corporation,* 45 Mass. 49, 58, 59, 38 Am. Dec. 339. In that case it was said:

"If we look from considerations of justice to those of policy, they will strongly lead to the same conclusion. In considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience, and to draw from them such rules as will, in their practical application, best promote the safety and security of all parties concerned. This is, in truth, the basis on which implied promises are raised, being duties legally inferred from a consideration of what is best adapted to promote the benefit of all persons concerned, under given circumstances. To take the well-known and familiar cases already cited; a common carrier, without regard to actual fault or neglect in himself or his servants, is made liable for all losses of goods confided to him for carriage, except those caused by the act of God or of a public enemy, because he can best guard them against all minor dangers. . . . The liability of passenger carriers is founded on similar considerations. They are held to the strictest responsibility for care, vigilance, and skill, on the part of themselves and all persons employed by them, and they are paid accordingly. The rule is founded on the expediency of throwing the risk upon those who can best guard against it. (Story, Bail. §590 *et seq.*)

"We are of opinion that these considerations apply strongly to the case in question. Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each de-

pends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service, if the common employer will not take such precautions and employ such agents as the safety of the whole party may require. By these means, the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. Regarding it in this light, it is the ordinary case of one sustaining an injury in the course of his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrong-doer."

This interest of a portion of the public in a particular employment, however, cannot furnish a sound basis from which to determine the liability of masters generally. In multitudes of cases employees may not be able to exert any appreciable influence upon each other and yet the risk of injury from a coservant be one clearly within the comprehension of the parties when the relation of master and servant was formed.

In the Farwell case the effect of the consociation of employees and their separation into departments upon the liability of the master was reasoned out as follows, at page 60:

"It was strongly pressed in the argument, that although this might be so, where two or more servants are employed in the same department of duty, where each can exert some influence over the conduct of the other, and thus to some extent provide for his own security; yet that it could not apply where two or more are employed in different departments of duty, at a distance from each other, and where one can in no degree control or influence the conduct of another. But we think this is founded upon a supposed distinction, on which it would be extremely difficult to establish a practical rule. When the object to be accomplished is one and the same, when the employers are the same, and the several persons employed derive their authority and their compensation from the same

source, it would be extremely difficult to distinguish, what constitues one department and what a distinct department of duty. It would vary with the circumstances of every case. If it were made to depend upon the nearness or distance of the persons from each other, the question would immediately arise, how near or how distant must they be, to be in the same or different departments. In a blacksmith's shop, persons working in the same building, at different fires, may be quite independent of each other, though only a few feet distant. In a ropewalk, several may be at work on the same piece of cordage, at the same time, at many hundred feet distant from each other, and beyond the reach of sight and voice, and yet acting together.

"Besides, it appears to us, that the argument rests upon an assumed principle of responsibility which does not exist. The master, in the case supposed, is not exempt from liability, because the servant has better means of providing for his safety, when he is employed in immediate connection with those from whose negligence he might suffer; but because the *implied contract* of the master does not extend to indemnify the servant against the negligence of any one but himself; and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand toward him in the relation of a stranger, but is one whose rights are regulated by contract express or implied. The exemption of the master, therefore, from liability for the negligence of a fellow servant, does not depend exclusively upon the consideration, that the servant has better means to provide for his own safety, but upon other grounds. Hence the separation of the employment into different departments cannot create that liabilty, when it does not arise from express or implied contract."

Commenting upon this argument, the supreme court of Rhode Island, in an opinion of much force and clearness, said:

"The reasons here set forth are a strong answer to the position taken in the Illinois cases. They show an obvious impracticability in trying to gage the liability of an employer, in a complex business, by the independence of its different branches, or by the in-

tercommunication of those employed. Not only would it be almost impossible, in many cases, to separate the work into distinct departments and to discern their dividing lines, but incidental duties, changing the relations of workmen to each other, would vary also the master's liability. He would thus be liable for the negligence of a servant at one time or place and not at another. Without a personal supervision of all his help in all their work, he could not know when he was responsible and when he was not. Moreover, such a rule would govern the liability of a master when the groundwork upon which the rule is founded did not exist. For if the test of liability be that of the separate and independent duties of the servants, they may, nevertheless, be so near each other as to be able to exert a mutual influence to caution; or, if it be that of association, they may still be in the same department, but unable, from their duties or position, to exert such influence. But, aside from these considerations, we do not think the rule is correct in principle. The principle upon which the determination of *Farwell v. Boston & Worcester R. R. Corp.* proceeded is the same that has been generally followed in England and in this country, namely, that the rights and liabilities of both master and servant are those which grow out of their contract relation. The master impliedly agrees to use due care for the safety of his servant, in providing suitable places and appliances for work; and, as is universally conceded, the servant agrees to assume the ordinary risks of his employment. The most common risks of service spring from the negligence of fellow servants. When one works with others, he knows that his safety depends on the exercise of care by those around him, as their safety depends also upon his own caution. No man can enter into an employment without a thought of this. Negligence, therefore, among workmen is a breach of the duty which each owes to the others, and not a breach of the master's duty, if he has exercised the care that is required of him. For his own negligence the master must answer, but for that of others, which is a risk incident to every employment, he has not agreed to be responsible, but on the contrary the servant has impliedly agreed to assume it upon himself." (*Brodeur v. The Valley Falls Company,* 16 R. I. 448, 451, 17 Atl. 54, 55.)

In the Dow case it will be observed that the distinction between superior and inferior servants is made to lie in the nature of the duty to be performed and not in mere rank or grade. The simple fact that an officer or agent hires or discharges men does not in itself make the master liable for his conduct generally, but the negligence of such an officer or agent as a representative of the master in hiring or retaining incompetent employees entails responsibility if injury result.

In the case of *K. P. Rly. Co. v. Salmon,* 14 Kan. 512, the limit of the master's liability to his employees was quite clearly perceived and stated. It was said, in effect, that upon officers and agents who may employ, retain or discharge men rests the duty of exercising reasonable care and diligence in furnishing a sufficient number of competent employees for the work to be done. Those who have the power to furnish implements, machinery or materials to other employees must furnish them in sufficient number and amount and of proper kind to accomplish the work. These officers, agents and employees discharge duties of a higher kind than those who merely do the work, and to that extent are regarded as higher or superior. Their employment in respect to such matters is not common with that of other employees. Having thus distinguished the duties which the master must perform, the court said, at page 524:

"A railway company is not responsible to one employee for the negligence of another employee where they are both engaged in the same common employment. . . . The grade of the employee within the particular employment does not generally make much difference. If the employee performs the duties of one of the higher officers, agents or servants, of which we have already spoken, the company is generally responsible for his negligence, whatever may be his grade. But if he is engaged in the same common employment with other employees, the company is generally not re-

Bridge Co. v. Miller.

sponsible for his negligence to the other employees, although he may be in fact the foreman for that particular work."

In the case of *K. P. Rly. Co. v. Little*, 19 Kan. 267, a superintendent had entire charge of the work of building a culvert. It was his duty to inspect machinery and see that it was in good order. A derrick became defective, to the knowledge of the superintendent, who failed to repair it, in consequence of which it fell and injured a workman. In the opinion it was said, at page 270:

"Owens however had the power to inspect said materials, tools, and implements, and if not sufficient or if they became insufficient to apply to his superior officers for others. The jury found specially that 'it was the duty of Owens to inspect the derrick, and see that it continued in good order.' Said derrick was sufficient and in good order when Owens received it. But afterward by use it became insufficient. . . . That Owens was negligent in using said derrick after he knew that it had become insufficient and unsafe, we suppose no one will question; but whether this negligence was the negligence of the railroad company, may be questioned, and is questioned. We think it was. Owens was the only representative that the railroad company had upon that work. He was really the superintendent of the railroad company for that particular work. As to the laborers on the work he was the railroad company itself. If he had been merely a foreman working under a common employer, a common master, a common principal, along with the other employees, then we suppose under the authorities he would have been only a fellow servant with the others and the company would not have been responsible for his negligence toward the others. But he was not merely a foreman working with the others under a common employer. As to the others he was the employer himself. He was their master, their principal."

Further on in the opinion it was stated, by way of showing the complete authority of the superintendent, that he hired and discharged men, but the basis of the

decision is the master's failure to furnish to his employees safe instrumentalities with which to work.

In the case of *A. T. & S. F. Rld. Co. v. Moore*, 29 Kan. 632, 644, the true rule was stated by Mr. Justice Valentine in the following luminous way:

"In all cases, at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow servants to work with him; and when the master has properly discharged these duties, *then, at common law, the servant assumes all the risk and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow servants and coemployees.* And at common law, whenever the master delegates to any officer, servant, agent or employee, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employee stands in the place of the master and becomes a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. But at common law, *where the master himself has performed his duty the master is not liable to any one of his servants for the acts or negligence of any mere fellow servant or coemployee of such servant, where the fellow servant or coemployee does not sustain this representative relation to the master;* nor is he liable for the failure of still other servants to perform certain acts, where the performance of such acts does not come within the proper line of their duties."

This language has been quoted as authoritative by a large number of the state courts of this country and by the supreme court of the United States. It was written upon the theory that the negligence of co-

servants is not a breach of the master's duty but a breach of the duty of servants toward each other; that the risk of injury from the negligence of fellow employees is one of the ordinary risks of any employment which are assumed when the contract of service is made; and that whatever in this respect the servant could reasonably foresee entered into the terms of his compensation.

In the case of the *St. L. & S. F. Rly. Co. v. Weaver,* 35 Kan. 412, 11 Pac. 408, 57 Am. Rep. 176, it was held that a section-foreman or section-boss whose duty consisted in keeping a railway-track in a safe condition for the operation of trains was not a coemployee or fellow servant with the engineer of a locomotive drawing a train. In the opinion something of the confusion, even then deeply confounded, exhibited by the authorities upon the law of coservice is reflected. In portions of the opinion the results of consociation and departmental separation are given weight, but the test of the liability of the master is finally placed upon the character of the duty to be performed and not upon the assignment of servants to different lines of employment or their opportunity to become acquainted with or to influence each other. The conclusion of the court was thus expressed, at page 430:

"Therefore, where a railroad company delegates, directly or indirectly, to a section-boss or section-foreman the duty of keeping a certain section of the railroad in proper condition and repair, and to warn trainmen in case of danger, and the section-boss fails to perform his duty in these respects, and a trainman is injured by reason of such negligence, the railroad company is responsible."

In the case of *Mo. Pac. Rly. Co. v. Peregoy, Adm'x,* 36 Kan. 424, 14 Pac. 7, the opinion was written by a commissioner. Language is used recognizing the so-called superior control limitation of the common-law fellow-servant rule and a quotation from *K. P. Rly.*

*Co. v. Salmon, supra,* is inserted in a manner indicating a misapprehension of the meaning of that case; but stable ground for the decision is reached in the second paragraph of the syllabus, which reads as follows:

"Where such foreman directed an unskilled apprentice to do work that requires a skilled mechanic to perform, and directed him to call to his assistance other employees also ignorant of said work; and said work was dangerous, and such danger was known to the foreman, and was unknown to such employees, and no notice was given to them of the danger, and the foreman failed to give them instructions which, if given and followed, would have prevented the accident, and one was killed while at said work, the employer is liable in an action for damages."

Under all the authorities such a risk is not one ordinarily incident to an employment; but to hold a company liable merely because the person injured was working under a foreman would undermine the authority of all the preceding Kansas decisions, some of which contain statements directly to the contrary. The necessary conclusion following a consideration of them is that unless the duty neglected be one which the master is bound to perform he cannot be liable, no matter what servant may be careless. He cannot be "represented" except in respect to his duty to furnish a safe place, careful employees, and the like. Having discharged this duty his responsibility ends, and distinctions of rank and grade as between the injured and injuring servant are of no consequence whatever.

In the year 1898 the opinion in the case of *Walker v. Gillett,* 59 Kan. 214, 52 Pac. 442, was promulgated. It held that a train conductor is not a fellow servant with a brakeman acting under his orders. The only Kansas case cited in support of the opinion is that of *A. T. & S. F. Rld. Co. v. Seeley,* 54 Kan. 21, 37 Pac. 104, which has no application, because the neglected duty there under consideration was one of inspection

which the master was bound to perform, and the decision was expressly placed upon that ground. The Dow case, *supra,* which decided the same question in exactly the opposite way, and which had stood as law in this state for twenty-seven years, was not given even a passing reference. The doctrine in the Ross case, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, was adopted in full. From the decision in the Ross case four justices dissented. When the Walker case was decided the Ross case already had been questioned and branded as "extreme" by this court in the Weaver case, *supra.* The supreme court of the United States had already receded from its doctrine, and the next year its authority was expressly repudiated in the case of *New England Railroad Co. v. Conroy,* 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, the head-notes of which are as follow:

"The negligence of a conductor of a freight-train is the negligence of a fellow servant of a brakeman on the same train, who was killed by an accident occurring through that negligence.

"The negligence of such conductor is not the negligence of the vice- or substituted principal or representative of the railroad company running the train, and for which that corporation is responsible.

"The general rule of law is that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment.

"An employer is not liable for an injury to one employee occasioned by the negligence of another engaged in the same general undertaking; it is not necessary that the servants should be engaged in the same operation or particular work; it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end; and ac-

cordingly, in the present case, upon the facts stated, the conductor and the injured brakeman are to be considered fellow servants within the rule."

If the discredited Ross case and the Walker case are to stand as authorities in this state, instead of the Conroy case and the Dow case, they must stand as arbitrary exceptions in the law of coservice, and not because they are justifiable upon any of the basic principles of that subject. Whether just cause exists for such a radical innovation cannot be determined in this case. It is the present purpose of the court to find and state and adhere to a logical doctrine, if that can be done.

Since qualifications of the fellow-servant rule on account of department, rank, grade, control and consociation are all substantially similar and all contradict the same fundamental propositions in the same way, the reasoning by which the supreme court of the United States overthrew the Ross case applies to the case at bar, and extracts from its opinions upon the subject are pertinent here. In the case of *B. & O. Railroad v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, Mr. Justice Brewer said:

"If the business of the master and employer becomes so vast and diversified that it naturally separates itself into departments of service, the individuals placed by him in charge of those separate branches and departments of service, and given entire and absolute control therein, are properly to be considered, with respect to employees under them, vice-principals, representatives of the master, as fully and as completely as if the entire business of the master was by him placed under charge of one superintendent. It was this proposition which the court applied in the Ross case, holding that the conductor of a train has the control and management of a distinct department. But this rule can only be fairly applied when the different branches or departments of service are in and of themselves separate and distinct. Thus, between the law department of a railway corporation and the

operating department, there is a natural and distinct separation, one which makes the two departments like two independent kinds of business, in which the one employer and master is engaged. So, oftentimes there is in the affairs of such corporation what may be called a manufacturing or repair department, and another strictly operating department; these two departments are, in their relations to each other, as distinct and separate as though the work of each was carried on by a separate corporation. And from this natural separation flows the rule that he who is placed in charge of such separate branch of the service, who alone superintends and has the control of it, is as to it in the place of the master. But this is a very different proposition from that which affirms that each separate piece of work in one of these branches of service is a distinct department, and gives to the individual having control of that piece of work the position of vice-principal or representative of the master. . . .

"The truth is, the various employees of one of these large corporations are not graded like steps in a staircase, those on each step being as to those on the step below in the relation of masters and not of fellow servants, and only those on the same steps fellow servants, because not subject to any control by one over the other. *Prima facie*, all who enter into the employ of a single master are engaged in a common service, and are fellow servants, and some other line of demarcation than that of control must exist to destroy the relation of fellow servants. All enter into the service of the same master, to further his interests in the one enterprise; each knows when entering into that service that there is some risk of injury through the negligence of other employees, and that risk, which he knows exists, he assumes in entering into the employment. . . .

"The danger from the negligence of one specially in charge of the particular work is as obvious and as great as from that of those who are simply coworkers with him in it. Each is equally with the other an ordinary risk of the employment. If he is paid for the one, he is paid for the other; if he assumes the one, he assumes the other. Therefore, so far as the matter

of the master's exemption from liability depends upon whether the negligence is one of the ordinary risks of the employment, and, thus assumed by the employee, it includes all coworkers to the same end, whether in control or not. . . .

"Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor. But, it may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is as fully discharged, when reasonable precautions have been taken to place fit and competent persons in charge."

In the case of *Northern Pacific Railroad v. Hambly,* 154 U. S. 349, 360, 14 Sup. Ct. 983, 38 L. Ed. 1009, Mr. Justice Brown said:

"To hold the principal liable whenever there are gradations of rank between the person receiving and the person causing the injury, or whenever they are employed in different departments of the same general service, would result in frittering away the whole doctrine of fellow service. Cases arising between persons engaged together in the same identical service, as, for instance, between brakemen of the same train or two seamen of equal rank in the same ship, are comparatively rare. In a large majority of cases there is some distinction either in respect to grade of service, or in the nature of their employments. Courts, however, have been reluctant to recognize these distinctions unless the superiority of the person causing the injury was such as to put him rather in the category of principal than of agent, as, for example, the superintendent of a factory or railway, and the employments were so far different that, although paid

by the same master, the two servants were brought no farther in contact with each other than as if they had been employed by different principals."

In the case of *Central Railroad Company v. Keegan,* 160 U. S. 259, 266, 16 Sup. Ct. 269, 40 L. Ed. 418, the court quoted approvingly the following language from the decision in *O'Brien v. American Dredging Co.,* 53 N. J. L. 291, 297, 21 Atl. 324:

"Whether the master retains the superintendence and management of his business, or withdraws himself from it and devolves it on a vice-principal or representative, it is quite apparent that, although the master or his representative may devise the plans, engage the workmen, provide the machinery and tools and direct the performance of work, neither can, as a general rule, be continually present at the execution of all such work. It is the necessary consequence that the mere execution of the planned work must be entrusted to workmen, and, where necessary, to groups or gangs of workmen, and in such case that one should be selected as the leader, boss or foreman, to see to the execution of such work. This sort of superiority of service is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made use of in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow workman. The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow servants."

In the case of *Northern Pacific Railroad v. Peterson,* 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, the headnote reads:

"H. was foreman of an extra gang of laborers for plaintiff in error on its road, and as such had charge of and superintended the gang in putting in ties and assisting in keeping in repair three sections of the road. He had power to hire and discharge the hands (13 in number) in the gang, and had exclusive charge of their direction and management in all matters connected with their employment. The defendant in

error was one of that gang, hired by H., and subject, as a laborer, while on duty with the gang, to his authority. While on such duty the defendant in error suffered serious injury through the alleged negligence of H., acting as foreman in the course of his employment, and sued the railroad company to recover damages for those injuries. *Held,* that H. was not such a superintendent of a separate department, nor in control of such a distinct branch of the work of the company, as would be necessary to render it liable to a coemployee for his neglect; but that he was a fellow workman, in fact as well as in law, whose negligence entailed no such liability on the company as was sought to be enforced in this action."

In delivering the opinion of the court Mr. Justice Peckham said, at page 355:

"In the Baugh case it is also made plain that the master's responsibility for the negligence of a servant is not founded upon the fact that the servant guilty of the neglect had control over and a superior position to that occupied by the servant who was injured by his negligence. The rule is that in order to form an exception to the general law of non-liability the person whose neglect caused the injury must be 'one who was clothed with the control and management of a distinct department, *and not a mere separate piece of work in one of the branches of service in a department.*' This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case.

"When the business of the master or employer is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may properly be considered, with respect to employees under them, vice-principals and representatives of the master as fully and as completely as if the entire business of the master were placed by him under one superintendent. . . .

"This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sec-

tions, aiding and assisting the regular gang of work-
men upon each section as occasion demanded, was not
such a superintendent of a separate department, nor
was he in control of such a distinct branch of the
work of the master as would be necessary to render
the master liable to a coemployee for his neglect.  He
was in fact, as well as in law, a fellow workman."

These decisions are in accord with the overwhelm-
ing weight of authority, both in England and in this
country.  (4 Thomp. Neg., ch. 125, in which the conso-
ciation doctrine is described as "local and peculiar"; 12
A. & E. Encycl. of L. 975, 976; 2 Lab. Mas. & Ser., ch.
27.  The latter text appears as a note to the report of
the case of *Sofield v. Guggenheim Smelting Co.*, in 50
L. R. A., 417.)

The views of various state courts upon the subject
are illustrated by the following quotations:

"The rule of law, that a servant cannot maintain an
action against his master for an injury caused by the
fault or negligence of a fellow servant, is not confined
to the case of two servants working in company, or
having opportunity to control or influence the con-
duct of each other, but extends to every case in which
the two, deriving their authority and their compensa-
tion from the same source, are engaged in the same
business, though in different departments of duty;
and it makes no difference that the servant whose
negligence causes the injury is a submanager or fore-
man, of higher grade or greater authority than the
plaintiff.

"If a master uses reasonable care in employing
suitable servants, in supplying and keeping in repair
suitable structures and engines, and in giving proper
directions and taking due precautions as to their use,
he is not responsible to one servant for the negligence
of another in the management and use of such struc-
tures and engines in carrying on the master's work.

"A railroad corporation is not liable to a brakeman
on one of its trains for injuries suffered from the neg-
ligent setting up and use of a derrick by workmen em-
ployed in widening its railroad."  (*Holden v. Fitch-
burg Railroad,* 129 Mass. 268, 37 Am. Rep. 343.)

"A carpenter who is injured while repairing an ele-

vator shaft and the operator of the elevator, both of whom were employed by the owner of the building, are fellow servants, employed in the same general business; and the master is not responsible for an injury resulting to the carpenter from the negligence of the operator of the elevator.

"Fellow servants are engaged in a common employment when each of them is occupied in service of such a kind that the others, in the exercise of ordinary sagacity, ought to foresee when accepting their employment that his negligence would probably expose them to injury; and, danger from the negligence of another employee being fairly apparent, all other employees assume the risk incident to that danger." (*Mann v. O'Sullivan,* 126 Cal. 61, 58 Pac. 375, 77 Am. St. Rep. 149.)

"The negligence of the foreman of a gang in failing to block a pile which was shoved against plaintiff, injuring him, because it was not blocked, is the negligence of a fellow servant, although the foreman had authority to employ and discharge plaintiff, and the plaintiff was under his superintendence and control in doing the work in the performance of which he was injured.

"Whether a negligent servant is the fellow servant of an employee who is injured by the carelessness of the former depends, not upon the relative ranks of the two servants, but upon the character of the work, the negligence with respect to which resulted in the injury.

"The negligent performance or omission to perform a duty which the master owes to his employees is at common law the negligence of the master, whatever the grade of the servant who is in that respect careless. The negligence of a servant engaged in the same general business with the injured servant is the negligence of a fellow servant, whatever position the former occupies with respect to the latter, as to all acts which pertain to the duties of a mere servant, as contradistinguished from the duties of the master to his employees." (*Ell v. Northern Pacific Railroad Co.,* 1 N. Dak. 336, 48 N. W. 22, 12 L. R. A. 97, 26 Am. St. Rep. 621.)

"A founder in a blast-furnace for the manufacture of pig iron, who has a separate department,—the in-

side work of the furnace,—and who has nothing to do with the other departments, except when acting through the general management or the foreman or boss of such departments, is held to be a fellow servant of an engineer whose business it is to move the cars on the furnace track as desired in the business, and to assume the risk that said cars might be handled negligently by said engineer." (*Adams v. Iron Cliffs Co.*, 78 Mich. 271, 272, 44 N. W. 270, 18 Am. St. Rep. 441.)

"When servants are employed and paid by the same master, and their duties are such as to bring them into such a relation that the negligence of the one in doing his work may injure the other in the performance of his, then they are engaged in the same common business, and being subject to the control of the same master, they are fellow servants, within the generally accepted meaning of the rule, no matter how different the grades of service or compensation may be, or how diverse or distinct their duties may be. (3 Wood's Railway Law, 1494, *et seq.*)

"And when the relation of fellow servants is established there can be no recovery from the common master or employer by one of them for an injury occasioned to him through the negligence or misconduct of his coemployee. In order to render the master liable in such case it would be necessary to show that the negligent servant was incompetent, and that he was selected without reasonable care and prudence, or that he was continued in the employment after notice to the master of his unfitness, or that the master had failed to furnish adequate means and materials for the work. Such is the law of this state, and such is the law as it has generally prevailed in America and England for many years." (*McMaster v. I. C. R. R. Co.*, 65 Miss. 264, 268, 4 South. 59, 7 Am. St. Rep. 653.)

The earlier Kansas decisions are all in harmony with these cases, and in perfect consonance with them are the latest utterances of the court upon that subject.

"Whenever coemployees, under the control of one master, are engaged in the discharge of duties di-

rected to one common end, such duties being so closely related that each employee must know he is exposed to the risk of being injured by the negligence of another, they are fellow servants, and each assumes the risk to which he is thus exposed. . . . Plaintiff and the operator of the elevator were engaged in one common pursuit, that of curing and packing meat. Each worked in a different line of employment but was engaged in the same general business and so closely related that the negligence of one was liable to inflict injury to the other. Therefore, he must be held to have assumed the risk of the negligence of his coemployee who ran the elevator." (*Donnelly v. Packing Co.,* 68 Kan. 653, 656, 75 Pac. 1017.)

"But whenever a negligent act violates any duty which the master himself owes to the servant, as, for example, the duty to make the service and the place in which it is performed reasonably safe, that fact controls, irrespective of the rank or grade of service between employees, and notwithstanding the circumstance that they are engaged in a common employment directed to a common end." (*Brick Co. v. Shanks,* 69 Kan. 306, 310, 76 Pac. 856, 857.)

In the light of these authorities it must be concluded that the servant, in the contract of employment, assumes all the ordinary risks of the employment. In the exercise of ordinary sagacity he must foresee that the negligence of those with whom he works may result in injury to him. Danger from that source is one of the ordinary incidents of the service, and so far as it fairly may be anticipated it is assumed. In the conduct of his business the master may utilize the economic principle of the division of labor, systematize and classify his work and regiment his forces without affecting his liability. Organization is not only essential to the successful management of all complex operations, but is demanded as a means of securing the safety of employees themselves, and the servant must anticipate its bearing upon his welfare. If the process proceed so far that different departments become in effect distinct enterprises,

each one may be treated as a separate undertaking. The danger of injury from employees so completely disconnected is so remote that it fairly may be said to be excluded from the contemplation of the parties when the contract is made; but this cannot be true in respect to those employees who are engaged in the same general business and whose efforts tend to promote the same general purpose and accomplish the same general end.  Each one of such servants must know that his relations with the others may endanger his safety.  They are all coservants and each one takes the risk of breaches of duty on the part of the others likely to do him harm.  This is true whether or not he may be able to become acquainted with all his fellows; whether or not he may be able to observe their conduct; whether or not he may be able to take precautions against their carelessness; whether or not he may be able to influence them in the formation of habits of foresight and care.  The master does not contract to furnish him these opportunities.  The master merely contracts to exercise reasonable care in the selection of his associates, and to furnish them all a reasonably safe place in which to work and reasonably safe materials, tools and appliances with which to work.  The fact that the servant is assigned to a department does not augment or qualify any of these duties, nor does such fact make the negligence of an injuring servant belonging to another department, but who is not charged with the performance of any of these duties, the negligence of the master; and before the master can become liable to an injured servant the master must be negligent.

All attempts to apply any other rule meet with unsurmountable difficulties.  The admission of Justice Thomas in the case of *Parker v. Hannibal & St. J. Ry. Co.*, 109 Mo. 362, 403, 19 S. W. 1119, 18 L. R. A. 802, is deeply significant:

"When the principle announced in the earlier cases —that all servants employed and paid by the common master to perform common service were fellow servants—was abandoned, the courts were left apparently with no sound principle by which they could be guided and controlled in concrete cases."

The following observations of Judge Dillon in 24 American Law Review, at page 189, contain an admonition which all courts dealing with the fellow-servant doctrine of the law should heed:

"Any attempt to refine based upon the notion of 'grades' in the service, or, what is much the same thing, distinct 'departments' in the service (which departments frequently exist only in the imagination of the judges and not in fact), will only breed the confusion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the judges that made it seem to be able to 'find no end, in wandering mazes lost.' "

In this case there can be no doubt that the machinist was engaged with the members of the pile-driving crew in the common employment of erecting the bridge company's false work, and was a fellow servant with them; that the danger to which he was exposed was one which was incidental to the work, and that the negligence of the chainman in securing the chain upon the pile was not the negligence of the master. Therefore, the judgment of the district court is reversed, with direction to enter judgment for the defendant on the findings of fact.

All the Justices concurring.

GREENE, J. (concurring specially) : I concur in the decision reversing this case, but do not indorse the law of fellow servants as stated and applied in some of the decisions quoted in the opinion.

CLARK A. SMITH, J. (concurring) : I concur in the

decision of this case, but cannot concur in some of the statements of the general doctrine as to the law of fellow servants. I think some of them too broad. Nor would I have it understood that this court goes to the extent of some of the cases cited, with apparent approval, as authority for this decision.