The State v. Cole.

---

No. 19,370.

THE STATE OF KANSAS, *Appellee,* v. AMOS COLE, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIME — *Larceny in the Nighttime — Insufficient Evidence.* The evidence in this case is legally insufficient to justify a conviction of the felony charged, to wit: that the alleged larceny was committed in the nighttime.

2. SAME—*Footprints—Insufficient Alone to Justify Conviction.* Footprints of horses, if they correspond to those which would be made by the horses probably driven, and footprints of men, if they correspond to those which would be made by the shoes probably worn by the accused, are admissible as identifying evidence, yet alone are inadequate to justify a conviction of a crime.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed January 9, 1915. Reversed.

*E. J. Blake,* of Gaylord, *F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellant.

*John S. Dawson,* attorney-general, and *L. C. Uhl, jr.,* county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant and his brother, Arthur Cole, were arrested upon a complaint, sworn to before

one F. M. Hawley, a justice of the peace of the county, on October 23, 1913, and upon a warrant issued thereon by such justice on the same day they were taken before him for trial. At the instance of the state the case was continued for hearing until October 31, 1913, and the defendants were required to and did enter into a recognizance for their appearance at that time. There is uncontradicted evidence in the case that a witness saw the words, "in the nighttime" inserted in both the complaint and the warrant after the charge, "did then and there unlawfully, feloniously take, steal and carry away," etc., and before the description of the property charged to have been stolen, and that this was done on October 31, 1913, to which day the case had been continued. Evidence was produced by the state and by the defendants before the justice on the last-mentioned date, and the defendants were required to give bond in a certain amount for their appearance at the district court of the county at the next term thereof. Bonds were accordingly given and approved and the defendants allowed to go.

When the case was called for hearing before the justice of the peace on October 31, the justice read to the defendants the complaint and warrant, each of which contained the words "in the nighttime," and the defendants each refused to plead thereto. The justice thereupon entered the plea of "not guilty" for each of them. A motion to quash the complaint was also filed and overruled. The complaint and warrant when issued and served charged a misdemeanor—the stealing of five bronze turkeys of the value of $7.50, the property of one Frank Draper. The county attorney filed an information in the district court charging the defendants jointly with stealing in the nighttime five bronze turkeys, the property of Frank Draper—a felony.

The appellant was separately tried in the district court, and before the introduction of evidence filed a plea in abatement to the information, which plea set

forth the change in the complaint and warrant before the justice of the peace. Objection was made by the state that the transcript furnished by the justice of the peace was on file in the district court, and was conclusive evidence of the facts therein recited. This objection was sustained. Also, evidence was offered as to the change in the complaint and warrant and for the same reason the objection thereto was sustained. In this the court erred. A justice court is an inferior court and the minutes and transcript of the proceedings therein are not conclusive evidence as are the minutes and transcript of a court of record. (*In re Baum,* 61 Kan. 117, 58 Pac. 958.)

This error alone, however, does not justify a reversal of the case. The justice was guilty of a gross abuse of discretion in permitting or proceeding with a hearing upon a complaint and warrant which had been changed without the issuance of new papers after the complaint had been filed and a warrant issued thereon had been executed. No court, when its attention is called thereto, should permit its files to be tampered with.

However, the acquiescence of the defendant in the order of the justice, in binding him over to the district court, and in giving the bond required for his appearance in such court, constitutes a waiver of the alleged defects in the complaint and warrant. (*The State v. Bjorkland,* 34 Kan. 377, 8 Pac. 391; *The State v. Longton,* 35 Kan. 375, 11 Pac. 163; *The State v. Moseli,* 49 Kan. 142, 30 Pac. 189; *Topeka v. Kersch,* 70 Kan. 840, 79 Pac. 681, 80 Pac. 29.)

In *The State v. Miller,* 87 Kan. 454, 124 Pac. 361, it was said:

"No reason is suggested why the defendant might not have refused to give the recognizance and have brought proceedings in habeas corpus before the probate judge and thus have procured his discharge. Under the well-established rule as stated in the former decisions of this court, he waived all defects in the complaint by procuring his discharge upon the bond." (p. 456.)

Numerous exceptions were saved by the appellant on the trial, among others that the evidence was not sufficient to sustain a conviction, and especially that there was no evidence that the turkeys, if stolen, were stolen in the nighttime.

Frank Draper, the complainant and alleged owner of the turkeys, testified to the identity of two turkeys which were at the Cole place on October 23, as his. Five witnesses of the Cole family testified they owned them. As to the time he lost his turkeys, Draper testified:

"Q. You are not positive how long it was before the 22d of October you counted your turkeys, are you? A. Well, I think I counted them on the 21st. I counted them almost every day.

"Q. In your opinion, there would be some days you did n't count them. A. Very seldom.

"Q. When did you first notice the loss of these turkeys? A. The five?

"Q. Yes, sir. A. Monday, on the 23d, when I was going to dinner."

That the turkeys were stolen in the nighttime rests upon the evidence of Simmonds and Dustin who testified substantially the same; in substance, that on October 23, 1913, they went to the Dustin place, past which the defendant had stated that he and his brother had driven on their return from Cedar on the night of October 22; that they measured horse tracks at different places in the road and in an alfalfa field and followed them north one and three-quarters miles and then a mile to the Cole place; there they asked for the spotted pony which was one of the team the accused had said he and his brother had driven from Cedar; that both horses were brought up from the pasture voluntarily by the accused and they measured the tracks made by each horse in dusty ground, made some allowance for the dust falling back over the track, and found them to be the same as the measurements taken at the Dustin place and at several different places where they had measured following the supposed trail;

that they had no rule but measured the tracks with a stick and did not know what had become of the stick. Also, that they had measured men's tracks at the Draper place, near his turkey pen, and measured the shoes of appellant and his brother at the Cole place; that the accused said they were the same shoes they had worn the night before; that the measurement of the shoes did not correspond with the tracks of men they had measured at the Draper place, and that Mr. Draper, who was present, said he did not think they were the shoes that made the tracks at his place. These measurements were also made with a stick and the stick was not produced.

As a means of identification the footprints of horses or of men, unless there is some peculiarity about them, are very uncertain evidence. The evidence as to the comparison of the horse tracks, simply as a question of size, seems fairly to show a correspondence; but more positively the measurements of the tracks of men tend to show that there was not a correspondence in the tracks at the Draper place, where the turkeys were alleged to have been stolen, and the shoes worn by the accused on the same day at their home. There is no evidence whatever of a change of shoes, and the evidence tends as strongly to show that the tracks made at Draper's turkey yard were not made by the accused as it tends to show that the tracks of the horses, at Dustin's and Draper's and along the way, were made by the horses whose feet and tracks were measured at the Cole place.

In 2 Bishop's New Criminal Procedure, 2d ed., p. 943, it is said:

"Foot-prints, on a question of identity, if they correspond to those which would be made by the boots probably worn, or the horse probably ridden, are admissible, yet alone are inadequate to justify a conviction."

There was no showing that Draper or his family were at home or whether they could have discovered a theft of their turkeys during the daytime from the

time he last counted his turkeys to the time he missed the five alleged to have been stolen. That the theft was committed in the nighttime is an essential ingredient of the crime of which appellant was convicted and must be established beyond a reasonable doubt.

The evidence is not legally sufficient upon this essential fact, and the judgment is reversed and the case is remanded for a new trial.